BIEKER *v.* OWENS.

5-2489                                                        350 S. W. 2d 522

Opinion delivered October 30, 1961.

*Sexton & Morgan,* by *Thomas A. Pedron,* for appellant.

*Shaw, Jones & Shaw,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellant, plaintiff in the court below, filed in the Sebastian

Circuit Court, Fort Smith District, his complaint against Milton Owens, Carroll L. Owens, Bill Griffin and M. N. Griffin, alleging that he was the minor son of Otto J. Bieker and resided in Fort Smith, Arkansas. That Milton Owens was a minor who resided with his father, Carroll L. Owens in Fort Smith; that Bill Griffin was a minor residing with his father, M. N. Griffin in Fort Smith; that on or about August 26, 1960, the defendants, Bill Griffin and Milton Owens, driving an automobile which was the property of Carroll Owens, pursued and overtook the plaintiff, Johnnie Bieker, and by driving directly in front of the automobile driven by Johnnie Bieker, forced him to stop and that the defendants, Griffin and Owens, forcibly, deliberately, maliciously, willfully and intentionally dragged the Bieker boy from his automobile and physically assaulted him by striking, beating and kicking the plaintiff and so injuring him that he was hospitalized for contusions of the face, lacerations, broken nose and mild concussion with other injuries. That the defendants, Carroll Owens and M. N. Griffin, knew that their sons, Milton and Bill, had dangerous tendencies and propensities of a willful and malicious nature and that by their lack of parental discipline and authority they had permitted, or failed to correct, the acts of their sons in the striking, beating and abusing other younger men less physically endowed than themselves and thus knowing of the propensities of these minors, the defendant parents failed and neglected to exercise needed restraint and authority over them and that due to such negligence the appellant alleges he was injured.

To this complaint Carroll L. Owens, appellee, interposed a general demurrer and the court, on February 20, 1961, sustained the demurrer and dismissed the complaint. From that action of the court comes this appeal.

"The general common law rule is that a parent is not liable of a minor child's tort unless there is some element of participation," *Bonner v. Surman,* 215 Ark. 301, 220 S. W. 2d 431.

The "Family Purpose Doctrine" is not accepted in this state and this court has recognized the rule that the negligence of a child cannot be imputed to the parent merely because of the parental relationship. *Richardson* v. *Donaldson,* 220 Ark. 173, 246 S. W. 2d 5511.

But here we are not concerned with the negligence of a child but with the negligence of the parent in permitting either actively or passively, a minor willfully or negligently to commit such acts which could reasonably be expected to cause injury to another.

It is within reason and good logic to say that the parent has a responsibility to control minor children while they are in their formative years. For while they are not in the custody of the parents, absent any official action to the contrary, no other source of control may be found. Of course minors above a certain age are subject to criminal and civil sanctions but these sanctions are remedial rather than preventative. There is a question whether the civil sanctions are of any consequence since judgments against minors are of little practical effect. The old adage "an ounce of prevention is worth a pound of cure," could be applied in these situations if the responsibility for the prevention is placed on the parents.

Since each human mind and personality is exclusively that of the individual possessing it, it would be unreasonable to place an absolute responsibility for the acts of another on any person. But where the parent (1) has the opportunity and ability to control a minor, and (2) has knowledge of the tendency or proclivity of the minor to commit acts which could normally be expected to cause injury to others, and (3) after having such opportunity, ability and knowledge has failed to exercise reasonable means of controlling the minor or appreciably reduce the likelihood of injury to others because of the minor's acts, the parent should be made to respond to those who have been injured by such acts of the minor.

39 American Jurisprudence § 58 states the rule in this manner:

"Although there are some decisions which have failed to recognize this principle, the general rule is that a parent may be liable for the consequences of failure to exercise the power of control which he has over his children, where he knows, or in the exercise of due care should have known, that injury to another is a probable consequence. Thus, a father may be held liable where he knows that a tortious act is in contemplation, *or that his children are persisting in a course of conduct likely to result in injury to another*. Failure to restrain the child, it is said, amounts to a sanction of or consent to his acts by the parent.

"It is questionable whether mere knowledge by the parent of his child's mischievous or reckless disposition is enough to make him liable for torts of the child . . . Certainly, where there is nothing to show any knowledge and therefore any approval by the parent of a line of conduct on the part of the child, the parent is not liable. However, it must be remembered that, as in all negligence cases, the issue in the last analysis is whether the parent exercised reasonable care under all the circumstances; therefore, especially where he has had knowledge of particular acts of the same kind as those which caused the injury, it would seem that he may, under some circumstances, be held liable solely on the basis of such knowledge followed by his failure to restrain or caution the child. Accordingly, it is held that to prove negligence on the part of the parent, evidence is admissible that he knew of the child's former reckless conduct." (Emphasis ours.)

67 Corpus Juris Secundum § 68 has this to say:

"As a general rule a parent may be liable for an injury which is caused directly by the child, where the negligence of the parent has made it possible and probable that such injury would so occur.

" * * * While mere knowledge by the parent of a child's mischievous and reckless or heedless or vicious disposi-

tion is not of itself sufficient to impose liability with respect to torts of the child, according to some authorities, liability of the parent arises from failure to exercise control over the child where the parent knows, or, in the exercise of due care, should know, that injury to another is a natural and probable consequence of such failure, and the parent may be liable for negligence in causing the child to become dangerous and in not attempting to restrain the child, or for failure to correct or restrain the child where the parent has knowledge of a dangerous habit of the child which is likely to cause injury to others.

''Generally speaking, liability of the parent is based on the rules of negligence rather than the relationship of parent and child. 'Negligence' in this connection has been regarded as a relative term and the duty imposed on the parent as dependent on the particular circumstances. In accordance with rules applicable in negligence cases generally, ***the negligence of the parent must have been the proximate cause of the injury. In other words, the injury must have been the natural and probable consequence of the negligent act, that is, a consequence which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such act. In order to render a parent liable, his or her negligence in the exercise of parental supervision must have some specific relation to the act of which complaint is made, and liability may not be predicated on a failure to supervise where supervision would not have rendered the parent aware of the possibility of the tortious conduct of the child.

''*The distinction has been made that any liability of the parent is for his own fault and not for the fault of the child,* and the fact that the child is liable for the particular tort does not prevent the imposition of liability on the parent for his negligence with respect to such tort.'' (Emphasis ours.)

In *Ellis* v. *D'Angelo et al,* 116 Cal. App. 2d 273, 253 P. 2d 675, the complaint alleged that parents em-

ployed plaintiff for first time as baby sitter for a four year old son; that parents knew and failed to warn plaintiff that son habitually engaged in violently attacking and throwing himself forcibly and violently against other people and violently shoving and knocking them and that shortly after plaintiff entered on her duties in the home the son attacked her to her resultant injury. The court held the complaint stated a cause of action against the parents for their negligence, saying:

"While it is the rule in California, as it is generally at the common law, that there is no vicarious liability on a parent for the torts of a child there is 'another rule of law relating to the torts of minors which is somewhat in the nature of an exception, and that is that a parent may become liable for an injury caused by the child, where the parent's negligence made it possible for the child to cause the injury complained of, and probable that it would do so.' *Buelke* v. *Levenstadt,* 190 Cal. 684, 689, 214 P. 42, 44; *Rocca* v. *Steinmetz,* 61 Cal. App. 102, 214 P. 257.''

In 155 A. L. R. 85, in discussing *Capps* v. *Carpenter,* 283 P. 655, the annotator states, at page 90:

"Evidence of the boy's reputation for possessing a malignant disposition, likely to make him dangerous to other children, as well as evidence of particular manifestations thereof, provided the instances were strictly relevant and of marked significance, was held admissible to show that his father knew, or should have known of such disposition; but evidence of reputation for possessing other propensities, or trivial instances of rough behavior were held not admissible.''

The question before us is, does the complaint state a cause of action? We think that it does. It describes the time and place and the extent of the tortious action, the injuries that were sustained by reason thereof, and in stating that the defendant parents had full knowledge and particulars of previous acts committed by their sons in inflicting injuries on smaller boys and that such minor sons had committed such willful and wanton acts, as the

act committed against the plaintiff and that said parents, knowing of these matters continuously failed to exercise any parental authority over the reckless and malicious conduct of their sons, thereby sanctioning, ratifying, and consenting to the wrongful acts, the complaint states a cause of action against the parents.

For the reason stated herein, the action of the circuit court in sustaining said demurrer is hereby reversed and this cause is remanded with directions to overrule the demurrer that further proceedings not inconsistent with this opinion may be had.

HARRIS, C. J., concurring.

CARLETON HARRIS, Chief Justice. I thoroughly agree with everything that is said in the Majority opinion, but, due to my long interest in matters relating to parental discipline, cannot refrain from making special comment in this case. I feel that this is one of the most important decisions that has been handed down by this Court, and truly "strikes a blow" for home discipline. I fervently trust that it will be effective in bringing to the attention of parents their responsibility for the actions of their minor children. Too many, though aware of the tendencies of the child to engage in improper or unlawful conduct, are unwilling to take the time, or make the effort, to curb such propensities, but rather, surrender this duty to the general public. Of course, I recognize that in some instances, children are incorrigible,[1] but these instances are rare when considered in relation to the overall problem. In such event, proper discipline would seem to preclude the use of the family automobile. I am proud to have a part in handing down this Opinion, and it is to be hoped today's action by the Court will receive wide attention.

[1] As defined by Webster: "Incapable of being corrected; not reformable; unmanageable; delinquent."