464 P.2d 911

Howard ROSS, individually and as natural guardian and as next friend of Levi Ross, a minor, Plaintiff-Appellant

v.

Michael SOUTER and Frank L. Souter and Allean A. Souter, Defendants-Appellees.

No. 394.

Court of Appeals of New Mexico.

Jan. 16, 1970.

**182**

Menig & Sager, Edward T. Curran, Albuquerque, for appellant.

Harry E. Stowers, Jr., Bruce C. Redd, Albuquerque, for appellees.

## OPINION

SPIESS, Chief Judge.

Plaintiff, Howard Ross, individually and as next friend of his minor son, Levi Ross, brought this action against Frank Souter, his wife and minor son, Michael Souter, to recover damages claimed to have been sustained by plaintiff and his son as a result of a fight which occurred between Levi Ross and Michael Souter. The first amended complaint alleges:

> "That the minor Defendant, Michael Souter, has in the past shown and exhibited propensities for causing injury and damage such as that incurred by the Plaintiff's minor son; that the Defendants, Frank L. Souter and Allean A. Souter, despite their knowledge of the dangerous propensities as aforesaid, have both failed and refused, jointly and/or severally, to exercise parental control over the said minor and as a result thereof the Defendants, Frank L. Souter and Allean A. Souter, jointly and severally, are liable for the damages as aforesaid."

Additionally, and by Count III of the complaint, plaintiff, Howard Ross undertook to invoke § 13–8–53.1, N.M.S.A.1953, as a basis for recovery of certain of the alleged damages against defendant parents. Section 13–8–53.1 provides, so far as is material here, as follows:

> "* * * any person, * * * shall be entitled to recover damages in a civil action in an amount not to exceed one thousand dollars ($1,000) in a court of competent jurisdiction from the parent * * * having the custody, and control of any unemancipated minor under the age of eighteen [18] years, who shall maliciously or willfully destroy property, real, personal, or mixed, belonging to such * * * person, * * *."

Plaintiff would apply the above statute upon the theory that Levi's teeth had been injured and damaged by Michael Souter; that plaintiff, Howard Ross, "had a prop-

erty interest in the substantial amount of orthodontic work performed prior to the fight in question and destroyed by the acts of young Michael Souter."

The trial court dismissed Count III of the complaint on the ground of its failure to state a claim upon which relief can be granted. Following a non-jury trial and at the conclusion of plaintiff's case the court entered judgment against the minor, Michael Souter, from which no appeal was taken. By the same judgment the action as to the defendant-parents was dismissed. This appeal has been prosecuted from the judgment dismissing Count III of the complaint and as to the dismissal of the action against the defendant-parents.

We first consider plaintiff's claim of error in the dismissal of Count III of the complaint. As we have stated, the plaintiff, Howard Ross, undertook to invoke § 13–8–53.1, supra, as a basis of recovery as against the defendant-parents. The portions of the statute which we have quoted clearly disclose that the statute applies only to property "real, personal, or mixed, belonging to such * * * person, * * *." No authority has been cited to us, nor has our search disclosed any holding that a child's teeth are property real, personal, or mixed, of his parent. We find no authority holding that a child's teeth may become property of a parent by reason of the fact that the parent has expended sums of money in procuring orthodontic treatment for the correction of the teeth.

■■■■■■We are aware that plaintiff's position seems to be that the investment in the orthodontic work on the child's teeth is the property which he considers may fall within the language of the above quoted statute and thus be a basis of recovery. We see no logical reason, nor has any been suggested to us, which would justify holding that either the teeth or the investment in orthodontic work should properly be considered as property of the parent, and for the damage or destruction of which, recovery might be had under the statute.

In our opinion, the order of dismissal as to Count III was obviously proper.

Plaintiff's further point is based upon the dismissal of the action as to the defendant-parents and is stated in the following language.

"IT IS ERROR TO DISMISS FROM AN ACTION THE PARENTS OF AN UNEMANCIPATED MINOR WHEN THE PARENTS, KNOWING OF THEIR CHILD'S PROPENSITY FOR FIGHTING, FAIL TO CONTROL THE CHILD AND THE MINOR CAUSES FORESEEABLE PERSONAL INJURIES TO ANOTHER BY AN UNPROVOKED BATTERING."

In essence, this point attacks the trial court's refusal to find negligence on the part of the defendant-parents.

■■■■ The parties are in substantial agreement as to the controlling law in the type of case presented here; namely, that in the absence of statutory law to the contrary the mere relationship of parent and child imposes no liability upon the parent for torts of the minor child. See Lopez v. Chewiwie, 51 N.M. 421, 186 P.2d 512 (1947).

■■■■ It appears also to be conceded, and properly so, that liability may be imposed upon a parent for torts of his minor child if he knows, or in the exercise of due care should have known, of the child's habits, traits or propensities toward the commission of the particular tort, has the opportunity and ability to control the minor, and has made no reasonable effort to correct or restrain him and thus encourages or acquiesces in such misconduct on the part of the child. Bieker v. Owens, 234 Ark. 97, 350 S.W.2d 522 (1961); Weisbart v. Flohr, 260 Cal.App.2d 281, 67 Cal.Rptr. 114 (1968); Bullock v. Armstrong, 180 So.2d 479 (Fla.App.1965); Sagnibene v. State Wholesalers, Inc., 117 Ga.App. 239, 160 S.E.2d 274 (1968); National Dairy Products Corporation v. Freschi, 393 S.W.2d 48 (Mo.App.1965); Guzy v. Gandel, 95 N.J. Super. 34, 229 A.2d 809 (1967); Lane v.

Chatham, 251 N.C. 400, 111 S.E.2d 598 (1959); Statz v. Pohl, 266 Wis. 23, 62 N. W.2d 556, 63 N.W.2d 711 (1954); 1 Harper and James, The Law of Torts, § 8.13 at 663 (1956); Annot., 155 A.L.R. 85 at 87.

In determining liability on the part of the defendant-parents the trial court's concern was with proof of their negligence. After plaintiff had concluded his case, as stated, the trial court sustained a motion dismissing the action as to the defendant-parents holding that "[t]he plaintiff failed to submit evidence sufficient to show that the defendant-parents were in any way negligent in failing to restrain, discipline or control defendant, Michael Souter."

■ There is evidence in the record from which the trial court could properly have found that the defendant-parents were aware of Michael's disposition to engage in fights and injure other children. We are not, however, directed by plaintiff to any evidence showing or tending to show that the defendant-parents made no reasonable effort to correct or restrain their son. The record, to the contrary, contains the following testimony of the principal of Michael's school.

"Q. And I believe that you also stated that Mrs. Souter was most cooperative in attempting to settle these problems and stop them from happening?

A. Yes. At no time did I meet opposition from Mrs. Souter in discussions with her. I had the feeling in talking with her that she was concerned and honestly concerned about the problem on hand and I felt that we had cooperation."

\* \* \* \* \* \*

"THE COURT: Let me ask you another thing concerning his fighting activities at school or at school functions, would you say that this was very unusual thing so far as students are concerned over there or was it the ordinary thing as far as boys of his age are concerned?

A. Well—

THE COURT: You know what I am trying to get at?

A. Yes, sir. Let me say this, that it is not unusual for boys this age to get involved in a fight or fights. I do believe that Mike had more than his share of fights, let's put it that way.

THE COURT: I see. Now, did you ever talk to Mike's father?

A. One time. One time.

THE COURT: On the telephone, you said?

A. That was a personal visit, as I remember, but I will be real honest with you, sir, I don't recall many of the facts concerning the conversation.

THE COURT: Now, concerning your conversations with his mother, can you tell me how she reacted to this matter?

A. Mrs. Souter was cooperative during our conversations. She would request specifics and I would give her, to the best of my ability, my idea of just what had occurred, and she would turn to Mike—I can remember this very well, that she on a couple of occasions turned to Mike and spoke to him and questioned him and reprimanded him in the office for some behavior which he had displayed, and assured me that I would have their cooperation, that they did not want this to continue, and I talked to Mrs. Souter, I believe on three occasions.

THE COURT: Would you say that in attempting to solve his problems at school in connection with this fighting that she cooperated with you in correcting him or she was careless about it?

A. In my presence, I believe that Mrs. Souter indicated that she was sincere in wanting this stopped. I cannot, of course, venture an opinion as to what the situation was at home and this sort of thing. I can speak, though, for the attitude which I saw displayed in my office during these conversations and I felt that Mrs. Souter was sincere in trying to get Mike to stop this fighting."

The dismissal of the action as to the defendant-parents was not improper. The judgment, consequently, should be affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.