489 P.2d 75

**Ruth PARSONS, a single woman et al., Appellants,**

**v.**

**Jerry B. SMITHEY and Sarah Smithey, husband and wife, Appellees.**

**No. 2 CA–CIV 856.**

Court of Appeals of Arizona, Division 2.

Sept. 28, 1971.

Rehearing Denied Nov. 4, 1971.

Review Granted Dec. 7, 1971.

Robertson & Fickett, P. C. by Burton J. Kinerk, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond by D. B. Udall, Howard D. Watt, Tucson, for appellees.

KRUCKER, Chief Judge.

The appellants, plaintiffs below, are appealing the judgment entered on a directed verdict in favor of the appellees, defendants below. Their claim against these defendants, parents of a minor male child, was predicated on the parents' alleged negligence in failing to exercise proper parental control over the boy.

On the night of March 26, 1967, Michael, the defendants' son, forced his way into Mrs. Parsons' bedroom through a glass sliding door in the Parsons' residence. He began beating Mrs. Parsons over the head with a hammer, she screamed thereby awakening her two younger daughters who came running into her bedroom to find her on the floor, bleeding, and still being struck by Michael with the hammer. The girls were unsuccessful in their attempts to separate Michael from their mother, whereupon Mrs. Parsons directed one of them to phone the police from the other room. When the daughter ran to do so, Michael ran after her with the hammer, beating her. She therefore ran back to the bedroom and they locked the door, shutting Michael out. However, he re-entered through the outside door after having obtained a knife

from the kitchen. He assaulted the women with the knife and also with a large belt buckle. The daughters finally induced Michael to leave by giving him some money. In departing, he stated, "If you tell anybody, I'll kill you."

The trial court directed a verdict in favor of the plaintiffs on the issue of Michael's liability to them and submitted to the jury only the damages issue. Pursuant to A.R.S. § 12–661, recovery against the parents in the amount of $500 was allowed.

On appeal, plaintiffs contend that the trial court erred in: (1) Refusing to submit the issue of the parents' negligence to the jury; (2) Denying admission into evidence of certain police and school records; (3) Denying pre-trial depositions and physical examination of Michael; and (4) Denying them access to the juvenile court file and Department of Corrections file pertaining to Michael.

█ It is universally held at common law that the mere fact of parental relationship does not make a parent liable for the torts of his minor child. However, liability may be imposed upon a parent as a principal tort-feasor, i. e., for his negligence in failing to reasonably restrain the child from vicious conduct where he has knowledge of the child's propensity towards such conduct. The duty of a parent to control the conduct of a child is set forth in the Restatement (2d) of Torts § 316:

> "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control."

See discussion in Seifert v. Owen, 10 Ariz.App. 483, 460 P.2d 19 (1969).

The question of parental liability for injuries intentionally inflicted by a child has not been considered in this jurisdiction. No purpose would be served by reviewing all the authorities in other jurisdictions. One common factor, however, appears salient in the assessment of liability to the parents, namely, that the child had the habit of doing the *particular type* of wrongful act which resulted in the injury complained of. E.g., Condel v. Savo, 350 Pa. 350, 39 A.2d 51 (1944); Norton v. Payne, 154 Wash. 241, 281 P. 991 (1929); Ellis v. D'Angelo, 116 Cal.App.2d 310, 253 P.2d 675 (1953); Martin v. Barrett, 120 Cal. App.2d 625, 261 P.2d 551 (1953); Gissen v. Goodwill, Fla., 80 So.2d 701 (1955); Zuckerberg v. Munzer, 197 Misc. 791, 95 N.Y.S.2d 856, aff'd 277 App.Div. 1061, 100 N.Y.S.2d 910 (1950); Caldwell v. Zaher, 344 Mass. 590, 183 N.E.2d 706 (1962); DePasquale v. Dello Russo, 349 Mass. 655, 212 N.E.2d 237 (1965); Gilbert v. Floyd, 119 Ga.App. 670, 168 S.E.2d 607 (1969); National Dairy Products Corp. v. Freschi, 393 S.W.2d 48 (Mo.App.1965); Bieker v. Owens, 234 Ark. 97, 350 S.W.2d 522 (1961); Zukerbrod v. Burch, 88 N.J.Super. 1, 210 A.2d 425 (1965); Muma v. Brown, 1 Mich.App. 373, 136 N.W.2d 696 (1965); Linder v. Bidner, 50 Misc.2d 320, 270 N. Y.S.2d 427 (1966); Annot. 155 A.L.R. 85.

The plaintiffs' position in the trial court was that the defendants had notice that their son had a propensity to assault others, had the opportunity to control him, and that their failure to obtain psychiatric treatment for him or otherwise control and restrain him rendered them liable for the injuries caused by the son's violent attack on them.

They contend that direction of a verdict in favor of the parents was error since plaintiffs presented sufficient evidence to submit the question of the parents' liability to the jury. Although we are of the opinion, as we shall subsequently discuss, that plaintiffs are entitled to a new trial, we are inclined to agree that the direction of a verdict on the evidentiary posture of the case in the trial court was appropriate.

The attack on the plaintiffs occurred in March, 1967, when the boy was 14 years old. The plaintiffs proved that in August, 1964, he had asked a strange woman in the street to take off her clothes and when she proceeded on her way and was about 100 feet beyond him, he threw a rock in her direction. In the fall of 1964, Michael followed a female classmate into the house-trailer where she lived and shoved her and pushed her. He neither hurt her nor did any damage to the trailer. His parents knew of both incidents.

Several of Michael's school teachers testified as to several incidents of a minor nature, i. e., "poking" other children at school. They also testified that Michael's mother was informed that psychiatric help might be advisable.

■ We believe that the foregoing evidence was insufficient to charge Michael's parents with reason to suspect that he had such a dangerous propensity as to engage in the attack upon which this lawsuit was predicated. In the case of Gilbert v. Floyd, 119 Ga.App. 670, 168 S.E.2d 607 (1969), a summary judgment in favor of the parents was sustained under similar factual circumstances. In that case, a butcher-knife stabbing by a 15-year-old occurred. The plaintiff's response to the defendant's motions for summary judgment consisted of two affidavits. The first affidavit recited that about three and one half years previously the defendant's son had put a rope around the neck of affiant's son and pulled it, that affiant had scolded him, and that she informed the parents of this conduct. The second affidavit, by the school principal, recited that the minor had been suspended from school several times prior to his withdrawal therefrom, that he had been defiant with teachers as well as affiant, that when he withdrew he came by the principal's office and said, "If I ever catch you out * * * I'll beat you with

a stick", that he and a teacher had counseled and talked with the boy's parents concerning his conduct at school and his rebellious attitudes, and that they had recommended that the boy receive some sort of psychiatric examination and possible therapy. The Georgia appellate court held that the facts recited in the affidavits, singly and collectively, were insufficient to charge the parents with knowledge of their son's "dangerous tendencies and propensities of a vicious and wanton disposition."

■ Complaint is also made on appeal as to the trial court's refusal to admit into evidence certain police reports and school records. It is well settled that the trial court has wide discretion to rule on the admissibility of business records. Kemp v. Pinal County, 8 Ariz.App. 41, 442 P.2d 864 (1968). Rule 44(q), Rules of Civil Procedure, 16 A.R.S., merely provides the method of proof of an admissible act, condition or event, and does not change the rule of competency or relevancy with respect to the recorded facts nor make proof that which is not proof. State v. Cadena, 9 Ariz.App. 369, 452 P.2d 534 (1969). The excluded police reports which referred to conduct completely unrelated to Michael's alleged propensity to assault others were properly denied admission.[1] Parental liability can be predicated only on a parent's failure to adopt reasonable measures to prevent a *definite* type of harmful conduct on the part of his child—general incorrigibility affords no basis for imposition of liability. Linder v. Bidner, 50 Misc.2d 320, 270 N.Y.S.2d 427 (1966). The trial court also properly rejected plaintiffs' argument that the reports were admissible for impeachment purposes since a witness cannot be impeached by contradiction upon an immaterial or collateral matter. State v. Mangrum, 98 Ariz. 279, 403 P.2d 925 (1965).

1. The police records show that at age seven Michael was apprehended for arson, at age eight again for arson, at age nine as a run-a-way, again at age ten as a run-a-way having taken his father's watch, and at age eleven an apprehension for arson, and at age fourteen, three consecutive joy-riding apprehensions.

As to the school records, we also find no abuse of discretion on the part of the trial court. The record reflects that as to the portion of the school record which was relevant to the issue of Michael's "propensity", oral testimony with respect thereto was presented and therefore the documentary evidence was merely cumulative. Other portions thereof were irrelevant.

Plaintiffs' pre-trial discovery attempts included deposing Michael, having him examined, and inspection of his juvenile court file. Since this cause must be remanded for a new trial, and the circumstances no longer exist which conceivably might have justified protection of Michael from the strain of deposition and physical examination, we need not consider the propriety of the protective orders.

A.R.S. § 8–228, although repealed in 1970,[2] provided:

"B. The disposition of a child or of evidence given in the juvenile court shall not be admissible as evidence *against the child* in any proceeding in another court. * * *"

Prior to trial, inspection of the juvenile court file was denied on the ground that its use as evidence against the child was precluded by statute. We find no error in this respect since the record does not reflect that the purpose of the examination was for use against the parents. At the time of trial, plaintiffs' counsel renewed the request for examination and also subpoenaed the records of the Department of Corrections. He indicated to the court that the purpose of the requested examination was not for use against the child but only for use against the parents, but this request was denied. In the case of State v. Fierro, 101 Ariz. 118, 416 P.2d 551 (1966), our Supreme Court very carefully pointed out that the statutory prohibition of A.R.S. § 8–228 is not all-encompassing. In other words, there is no statutory ban for *any* purpose but only when used as evidence against the child.

As to the records of the Department of Corrections, we find no like statutory inhibition. A convincing argument was made to the trial court by defense counsel that the policy of the juvenile law is to hide youthful errors from the full gaze of the public and to bury them in the graveyard of the forgotten past. *See,* State v. Guerrero, 58 Ariz. 421, 120 P.2d 798 (1942). The record also reflects that the trial judge was of the opinion that the plaintiffs had not demonstrated that there was no other way available to obtain whatever proof might appear in the juvenile court record. He granted the motion to quash the subpoena *duces tecum* and denied an *in camera* inspection of the juvenile court file. Since these records are not part of the record on appeal, we are unable to say that the trial court's denial of inspection was merely harmless error. Plaintiffs' pre-trial attempts at discovery were thwarted at every turn in an effort to protect the physical and mental health of the minor defendant. It certainly cannot be said that they did not exert diligence in gathering facts relevant to the boy's "propensity" and his parents' knowledge thereof. Under these circumstances, we do not conceive that any policy of "hiding youthful errors" can be invoked for protection of the parents. To hold otherwise would be tantamount to complete frustration of the rules of discovery and concomitantly, ascertainment of the truth. Since the plaintiffs were foreclosed from possibly acquiring information relative to the issue of

---

2. The statutory counter-part of A.R.S. § 8–228 in the new Juvenile Code is A.R.S. § 8–207, which provides in pertinent part:

"C. The disposition of a child in the juvenile court may not be used against the child in any case or proceding in any court other than a juvenile court. * * *"

parental liability by a misapplication of A. R.S. § 8–228, supra, reversal is mandated.

Judgment reversed and cause remanded for further proceedings not inconsistent herewith.

HATHAWAY, J., and LLOYD C. HELM, Superior Court Judge, concur.

Note: Judge LAWRENCE HOWARD having requested that he be relieved from consideration of this matter, Judge LLOYD C. HELM was called to sit in his stead and participate in the determination of this decision.