504 P.2d 1272

Ruth PARSONS, a single woman, Dawn Parsons and Gail Parsons, Minors, by and through their Guardian ad Litem, Donald S. Robinson, Appellants,

v.

Jerry B. SMITHEY and Sarah Smithey, husband and wife, Appellees.

No. 10685–PR.

Supreme Court of Arizona, In Banc.

Jan. 9, 1973.

Rehearing Denied Feb. 6, 1973.

**50**

Robertson, Molloy, Fickett & Jones, by Burton J. Kinerk, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Howard D. Watt, Tucson, for appellees.

LOCKWOOD, Justice.

We granted the petition for review in this case in view of the importance of deciding a question of first impression in this state. Opinion of the Court of Appeals, 15 Ariz.App. 412, 489 P.2d 75 (1971) vacated.

On March 26, 1967, early in the morning, Michael Smithey entered the home of Mrs. Ruth Parsons through an arcadia door and began beating her over the head with a hammer. Her cries for help awakened her two daughters, who came into her bedroom to protect her. Michael was asked by Mrs. Parsons why he was beating her and his response was that she should "take off [her] clothes and lay down on the floor." When one of the daughters ran "down the hall"

to call the police Michael followed her and began beating her with the hammer also. He was locked out of the bedroom but re-entered armed with a knife and a large belt buckle. He continued to attack and cut Mrs. Parsons' ear almost entirely off. Finally he was persuaded to leave when the daughters offered him a small sum of money. As he left he threatened "[i]f you tell the police, I will come back and kill all three of you."

As a result of the attack Mrs. Parsons suffered multi-contusions, compound fractures and lacerations to her head. One of her daughters received a surface cut to her neck.

Michael was sent to Fort Grant and ultimately to California for psychiatric treatment.

Mrs. Parsons and her daughters brought suit for damages against Michael and his parents, Jerry B. Smithey and Sarah Smithey pursuant to A.R.S. § 12-661 (1956), and also on the common law doctrine of parental negligence, in failing to exercise control of a minor son. The trial court directed a verdict in favor of the plaintiffs on the issue of Michael's liability, and directed a verdict for defendants on the issue of the parents' liability for negligence for failure to control Michael. On stipulation, the parents agreed to pay $500 of the verdict against Michael.

Plaintiffs argue that the trial court erred in denying them access, both before and during trial, to the juvenile records of Michael. The court refused permission to examine these records under the authority of A.R.S. § 8–228, subsec. B (1956) which provided:

"The disposition of a child or of evidence given in the juvenile court shall not be admissible as evidence against the child in any proceeding in another court, nor shall such disposition or evidence disqualify a child in a civil service application, examination or appointment."

In State v. Fierro, 101 Ariz. 118, 416 P. 2d 551 (1966), (reaffirmed in principle in

State v. Horton, 101 Ariz. 229, 418 P.2d 385 (1966)), we held that the record of a juvenile defendant could not be used as evidence, but could be used by the court in determining sentence for the defendant in a criminal trial. We held that the statutory prohibition does not forbid the use of information for any purpose; on the contrary, it bans the use of said order (of disposition) or evidence only when used as evidence against the child in any case or proceeding in any other court. State v. Fierro, supra, 101 Ariz. at 120, 416 P.2d at 553.

It is obvious that the statutory prohibition goes to the use of an order of disposition or evidence given in juvenile court. With this restriction any records of the juvenile proceedings on file with the Clerk of the Superior Court are subject to inspection and use as are any other public records.

■ To permit inspection of juvenile records which are not required to be filed with the Clerk, maintained as work product of juvenile probation officers and staff for use by the juvenile court judge for analytical or other purposes in handling a juvenile case, for the benefit of a person not the juvenile involved, would subvert the intent of the statute. For, as in this case, where the juvenile and his parents are involved in a civil action, it would be difficult, if not impossible, to separate the issues pertaining to the juvenile from those pertaining to the other persons. The prejudice sought by the statute to be avoided, would inevitably arise as to the juvenile. Hence the court did not err in refusing plaintiffs' access to any juvenile record of Michael, except those on file and not restricted.

The trial court vacated plaintiffs' request to take Michael's deposition and denied the motion requiring his physical examination in 1968. The reason for the decision was that although the defendant parents were given the notice of deposition and motion for physical examination of Michael, they were unable to produce Michael because he was outside the jurisdiction in the exclusive custody of the State of California.

■ A second notice of deposition was given to the parents in 1969. Pursuant to 16 A.R.S. Rule of Civil Procedure 30(c) (Supp.1973), (since amended and incorporated in 16 A.R.S. Rule of Civil Procedure 26(a)), defendants moved the court for an order that the deposition not be taken, attaching an affidavit of a psychologist that "in his opinion Michael Smithey's mental health and stability might be jeopardized at the present time by forcing him to testify or to be deposed." Under the unusual circumstances of this case we cannot say the trial court abused its discretion in denying the taking of the deposition and physical examination. See 16 A.R.S. Rule of Civil Procedure 30(c) and 35(a) (Supp. 1973).

The theory which the plaintiffs invoke in their suit against the parents is that of parental neglect in failing to control Michael. We have not heretofore decided the issue of parental liability for the torts of their children. But see, Seifert v. Owen, 10 Ariz.App. 483, 460 P.2d 19 (1969).

■ At common law it is well established that mere parental relationship will not impose liability upon the parents for the torts of their children. National Dairy Products Corp. v. Freschi, 393 S.W.2d 48 (Mo.Ct.App.1965). See discussion in Annot. 155 A.L.R. 85 (1945); Note, The Iowa Parental Responsibility Act, 55 Iowa L.Rev. 1037 (1970); Comment, Liability Of Negligent Parents For The Torts Of Their Minor Children, 19 Ala.L.Rev. 123 (1966); Comment, Parental Tort Liability, 1 Land and Water L.Rev. 299 (1966). But there have evolved in the law a few doctrines which impose liability upon the parents for their children's torts. One such doctrine which recognizes that liability is where the parent has failed to exercise the care which a reasonable parent should ex-

ercise to prevent his child from creating an unreasonable risk of harm to others.[1] Bieker v. Owens, 234 Ark. 97, 350 S.W.2d 522 (1961).

The Restatement (Second) of Torts § 316 (1965) succinctly enunciates the standard for determining liability under this doctrine.

> "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> > (a) knows or has reason to know that he has the ability to control his child, and
> >
> > (b) knows or should know of the necessity and opportunity for exercising such control."

Liability of the parents is based upon ordinary rules of negligence. "[T]he injury must have been the natural and probable consequence of the negligent act, that is, a consequence which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such act." National Dairy Products Corp. v. Freschi, supra, 393 S.W.2d at 53.

In the present case the plaintiffs argue that the parents had or should have had knowledge of Michael's "aggressive behavior" such that they should have reasonably foreseen that he would cause violent injury to others. Knowing this they breached a duty owed to Mrs. Parsons by failing to properly control Michael. It is strongly suggested that "reasonable control" under the circumstances would have been to send Michael to a psychiatric clinic.

A portion of the evidence offered by the plaintiffs was excluded by the trial judge, but the following was admitted: the par-

ents' knowledge (1) that Michael had once told a strange woman on the street to remove her clothes and when she refused, he threatened to throw rocks at her; (2) that Michael was a behavior problem in school, e. g., his teacher had to move him because he was "poking and pummeling" other children; he acted aggressively toward other children and seemed as if he "hated the world;" (3) that Michael had once followed a classmate and forced his way into her home and shoved her around; (4) that Michael was in need of professional psychiatric treatment. This last recommendation was made in 1962 by Dr. Zemsky, school psychiatrist, in 1965 by Mrs. Baker, a psychologist and in 1967 by Mrs. Edith Benson, school counselor.

The following additional offer of proof was made and refused: (1) Michael's police record showing that he was apprehended for arson at the age of eight and eleven, for theft of his father's watch at the age of ten, for joyriding three times at the age of fourteen, and for running away at the age of nine; (2) Michael's school records in which there was contained a recorded meeting between Larry Hart, Michael's school counselor, and the parents at which time the Smithey's were encouraged to obtain psychiatric help for Michael, and recorded reports of Michael's teachers commenting on his aggressive behavior.

The plaintiffs maintain that the trial court erred in directing a verdict in favor of the parents in view of the evidence presented at trial and that the court further erred in refusing admission of the police and school records.

■ The defendant parents argue that the law in virtually all other jurisdictions is that where parental liability may attach for the tort of a child, the child must have

---

1. Other doctrines where parents have incurred liability which are not relevant in this case are:
   1. Where the child acts as the agent of the parent.
   2. Where the child is entrusted with a dangerous instrumentality.

3. Where the parents participate, consent or ratify the act of the child. See discussion in Comment, Liability Of Negligent Parents For The Torts Of Their Minor Children, 19 Ala.L.Rev. 123 (1966); Comment, Parental Tort Liability, 1 Land and Water L.Rev. 299 (1966).

exhibited to the parents a specific habit of doing the particular type of wrongful act which resulted in the injury complained of. Plaintiffs' evidence failed to prove that Michael had a propensity to commit the type of act that he committed upon Ruth Parsons and her daughters. Therefore the trial court was correct in directing a verdict for the defendants on the basis that reasonable parents under the circumstances could not have anticipated Michael's violent conduct. It is further argued that the defendants believe that even if the trial court had admitted the police and school records there would still have been insufficient evidence to present a jury question.

It appears that the trial judge excluded the school and police records on the basis that they were irrelevant and because some of them did not comply with the business records exception.

■ School records and police records may properly be admitted under the business record exception. See e. g., Snyder v. Beers, 1 Ariz.App. 497, 405 P.2d 288 (1965). From a reading of the record we are of the opinion that the foundation as to the care and custody of the records in this case was adequate. However, this does not appear to be the sole basis for the trial judge's decision to exclude the evidence. He was also of the opinion that the records contained "numerous" items which were not within the Uniform Business Records Act. Because the entire exhibits are not made a part of the record on appeal, we are unable to ascertain whether this was true.

Considering the question of the relevancy of the excluded records it seems to have been the understanding of the trial court that evidence which did not tend to prove a previous act committed by Michael should not have been admitted. Therefore the court hesitated in admitting the opinions and conclusions of psychiatrists, psychologists, school counselors and teachers.

■ On the subject of parental liability for failure to control children, it appears that the parents must have knowledge of the child's habitual conduct manifested by evidence of prior acts which are the same or similar to the act complained of.[2] We do not read these cases as mandating that knowledge can only be proved by prior acts of the same or similar type. Where it is alleged that the parents had knowledge of the child's particular disposition which was such that they should have known that he would commit a certain type of act, many types of evidence may be relevant.

In a recent California case, Reida v. Lund, 18 Cal.App.3d 698, 96 Cal.Rptr. 102 (1971), the parents of the injured victims were sued when their son stationed himself upon a hill overlooking a highway and fired at automobiles as they passed. When the police arrived the boy shot himself. The plaintiffs, who were shot by the boy, offered as evidence of the parents' knowledge of the child's violent and irrational disposition the statements of a psychologist. He stated that he had read the transcript of the coroner's inquest and newspaper articles about the shooting and he concluded that the boy was a paranoid schizophrenic and that the symptoms of the disease must have been apparent to the parents. Although the court dismissed the case because the mere statement of the psychologist was thought insufficient evidence, it was implied that if the statement of the psychologist were buttressed with statements of teachers, doctors, fellow students, friends, acquaintances, and neighbors of the boy the evidence might have been sufficient to create a triable issue of fact.

■ All evidence which indicates that it should have been "readily apparent" to his parents that Michael's disposition was such

2. See National Dairy Products Corp. v. Freschi, supra; See also Gissen v. Goodwill, 80 So.2d 701 (Fla.1955); Ellis v. D'Angelo, 116 Cal.App.2d 310, 253 P. 2d 675 (1953); DePasquale v. Dello Russo, 349 Mass. 655, 212 N.E.2d 237 (1965); Flettrich v. State Farm Mut. Auto Ins. Co., 238 So.2d 220 (La.App.1970); Ross v. Souter, 81 N.M. 181, 464 P.2d 911 (1970).

that he had a propensity to commit violent and vicious acts should have been admissible, whether that evidence be statements of teachers, psychiatrists or evidence of prior acts. We note that to adopt the stringent rule of excluding all but specific similar acts to prove knowledge would most often leave the first of the most violent and vicious acts uncompensated.

The rule on appeal from a directed verdict is that "the evidence will be viewed in a light most favorable to the appellant; whatever competent evidence appellants have introduced, including all inferences that can reasonably be drawn therefrom, is assumed to be true; and if the evidence is of such character that reasonable minds may differ on the inferences to be drawn therefrom, the case must be submitted to the jury." Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 332, 429 P.2d 442, 444 (1967).

■ Here, we find that all of the evidence offered by the plaintiffs, either admitted or excluded, was not sufficient to send the case to the jury on the issue of whether Mr. and Mrs. Smithey should have had knowledge of Michael's propensity to commit the type of act complained of. Under no view of the evidence is it proper to conclude that Mr. and Mrs. Smithey should have reasonably foreseen that Michael had a disposition to perform such a violent act.

■ What we are concerned with here is the perimeter of the scope of the duty owed by the defendants. It is the law of this state that a defendant should never be held for consequences which no reasonable man would expect to follow from his conduct. Tucker v. Collar, 79 Ariz. 141, 146, 285 P.2d 178, 181 (1955). Mr. and Mrs. Smithey may have been aware that Michael was a behavioral problem due to the conduct he had exhibited in the past. They then could reasonably foresee the same type of conduct that Michael had shown by his previous acts. True, the recommendation that Michael needed psychiatric help should have magnified the intensity of Michael's problems to the parents. There was testimony by those who had recommended to Michael's parents that they seek psychiatric help that they anticipated that Michael would have committed an act such as the one he commited upon Mrs. Parsons. The evidence does not, however, indicate that their anticipation was ever communicated to Mr. and Mrs. Smithey. In this case it appears that the evidence of Michael's past behavior would not have led a reasonable parent to conclude that Michael could commit such a violent and vicious act. To hold that the parents should have foreseen from his past conduct, and from the fact that they were advised to seek psychiatric help for Michael, that Michael would commit such violent and vicious acts would stretch the concept of foreseeability beyond permissible limits.

We are certainly concerned about the serious problem of juvenile delinquency and agreed as to the importance of generating a sense of responsibility on the part of the parents with respect to the behavior of their children. See concurring opinion in Bieker v. Owens, supra. But we adhere to the rule of negligence holding that liability must be commensurate with the foreseeable risk.

Judgment affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.