NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ADAM A. ACOSTA, *Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0388
FILED 3-25-2021

---

Appeal from the Superior Court in Maricopa County
No.  CV 2016-009903
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

---

COUNSEL

Watters Law PLLC, Tucson
By Andrea E. Watters
*Counsel for Plaintiff/Appellant*

Metzger Law Firm PLLC, Phoenix
By Nathan T. Metzger, Perry E. Casazza
*Counsel for Defendant/Appellee, State of Arizona*

Grasso Law Firm PC, Chandler
By Robert Grasso Jr., N. Patrick Hall
*Counsel for Defendant/Appellee Gap Ministries, et al.*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1      While living in a group foster home as a minor ward of the State, Adam Acosta sustained a serious physical injury when another child in foster care pierced his eye with a pencil. The superior court dismissed Acosta's claims against the State and other defendants, finding, as a matter of law, that the defendants did not breach a duty of care that caused the eye injury. Acosta appeals the superior court's grant of summary judgment and two disclosure rulings. For the following reasons, we affirm.

## BACKGROUND

¶2      At the time of their physical altercation ("the pencil incident"), 16-year-old Acosta and 14-year-old Michael had shared a bedroom in a Gap Ministries' group home for nearly one year.[1] On that day, Dawn Pratt, the group home foster mother, asked Acosta to clean his portion of the shared bedroom. When Acosta later announced that he had cleaned his half of the room, Pratt inspected his work.

¶3      After Acosta had cleaned his share of the mess, Pratt called downstairs to Michael, asking him to clean his portion of the room. While Pratt stood in the doorway, Michael brushed by and began cleaning the bedroom closet. As he did so, he and Acosta began what became a heated exchange, including profanity. To defuse the situation, Pratt repeatedly asked Acosta to leave the room, but he ignored her requests.

¶4      Before long, Acosta crossed the room and pushed Michael. Pratt could not see Michael because of Acosta's larger physical stature and position in the room (at the time of the incident, Acosta was considerably taller and more than a hundred pounds heavier than Michael). Seconds later, Pratt saw both boys roll onto a bed, locked in a physical struggle. Pratt immediately moved toward the boys and ordered them to separate. By the

---

[1]    To protect his privacy and for ease of reference, we refer to the foster child by a pseudonym.

time she reached the bed, however, Michael had already punctured Acosta's eye with a pencil. As a result of the injury, Acosta was blinded in one eye.

¶5            Acosta filed a complaint against the State, the Arizona Department of Economic Security, the Division of Child Safety and Family Services (collectively, "the State Defendants"), Gap Ministries, Inc., Harold and Dawn Pratt, and Gregory and Pamela Ayers (collectively, "the Gap Defendants"), alleging negligence, negligence per se, negligent hiring and supervision, and premises liability. After separately answering Acosta's complaint, denying liability, the State Defendants and the Gap Defendants moved for summary judgment, both separately and joining in each other's motions. Together, the defendants argued, among other things, that as a matter of law, they neither breached a duty owed to Acosta nor proximately caused his injury.

¶6            With their motions pending, the defendants challenged Acosta's disclosure of his expert's declaration as untimely because it was submitted in response to their motions for summary judgment. After considering the fully briefed motions and oral argument, the superior court: (1) granted summary judgment in favor of the State Defendants on Acosta's claim for negligence per se, finding the statute upon which the claim was predicated, A.R.S. § 8-529(A)(2), by its express terms, does not "establish any legally enforceable right or cause of action on behalf of any person"; (2) granted summary judgment in favor of the State Defendants on Acosta's claim of premises liability, finding the State had no ownership interest in the Gap Ministries' foster care home; (3) granted summary judgment in favor of the Gap Defendants on Acosta's claim of negligence per se, finding neither A.R.S. §§ 8-516 nor -529 imposes anything other than a "general standard of care"; (4) granted summary judgment in favor of the Gap Defendants on Acosta's claim of premises liability, finding Acosta presented no evidence of an unreasonably dangerous condition at the foster home at the time he sustained his eye injury; and (5) concluded Acosta failed to timely supplement the disclosure of his expert but declined to preclude Acosta's reliance on the expert's testimony; instead, imposing sanctions under Arizona Rule of Civil Procedure ("Rule") 37(c)(3)(A), allowing the defendants to depose the expert or conduct any other associated discovery at Acosta's expense. The court denied the remainder of the defendants' motions for summary judgment without prejudice, inviting the defendants to renew their motions after discovery was complete.

¶7          Once the parties completed discovery, the defendants renewed their motions for summary judgment. Citing *Parsons v. Smithey*, 109 Ariz. 49 (1973), the superior court found, as a matter of law, that it was not foreseeable that Michael would pierce Acosta's eye with a pencil. Accordingly, the court granted summary judgment in favor of both the State Defendants and the Gap Defendants on Acosta's negligence claim. Because the Pratts completed all the training required by the State, the court also granted summary judgment in favor of the Gap Defendants on Acosta's negligent hiring and supervision claim. Having so found, the court dismissed all of Acosta's remaining claims.

¶8          After denying Acosta's motion for new trial, the superior court entered separate final judgments dismissing the defendants from the action with prejudice and awarding the defendants' their taxable costs and a portion of their attorneys' fees as sanctions. Acosta timely appealed.

## DISCUSSION

### I.     Summary Judgment Rulings

¶9          Acosta challenges the dismissal of his negligence claim, asserting disputed issues of material fact precluded summary judgment. He contends the superior court incorrectly applied *Parsons* and invaded the province of the jury when it determined, as a matter of law, that it was unforeseeable that Michael would puncture his eye with a pencil. First, Acosta argues the defendants "knew or should have known" that Michael had a history of violence and were therefore negligent when they placed him in a shared bedroom. Second, Acosta asserts that given the length of his confrontation with Michael, Pratt was negligent by failing to intervene and prevent the injury.

¶10          In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party and affirm "if the evidence produced in support of the defense or claim has so little probative value that no reasonable person could find for its proponent." *State Comp. Fund v. Yellow Cab Co. of Phoenix*, 197 Ariz. 120, 122, ¶ 5 (App. 1999). "We review de novo the [superior] court's application of the law and its determination whether genuine issues of material fact preclude summary judgment." *Id.*; *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). We will affirm the court's "decision if it is correct for any reason, even if that reason

was not considered by the [] court." *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

¶11　　　"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). While the "first element, whether a duty exists," is a question of law, breach, causation, and damages "are factual issues usually decided by [a] jury." *Id.* Nonetheless, summary judgment is "appropriate if no reasonable juror could conclude that the standard of care was breached or that the damages were proximately caused by the defendant's conduct." *Id.* at 143, ¶ 9 n.1.

¶12　　　Foreseeability is not part of "our duty framework," but it may "be used to determine whether the defendant breached the relevant standard of care or caused the plaintiff's injury." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564–65, ¶¶ 9, 12 (2018). Applying a foreseeability analysis to the elements of "breach and causation determines whether the *injury* was foreseeable, [] not whether the *plaintiff* was foreseeable." *Id.*

¶13　　　As noted by Acosta, the superior court relied extensively on *Parsons* to inform its foreseeability analysis. In that case, the defendants' minor son broke into the plaintiffs' home and awakened one of the plaintiffs by "beating her over the head with a hammer." 109 Ariz. at 50. The plaintiffs sued the defendants for parental negligence, claiming they failed to exercise proper control over their son and prevent him from inflicting the plaintiffs' injuries. *Id.* The superior court entered a directed verdict in favor of the defendants, finding no liability for their son's conduct. *Id.*

¶14　　　On appeal, the supreme court applied the parental liability standard set forth in Restatement (Second) of Torts, § 316 (1965), establishing that a parent has "a duty to exercise reasonable care" to control his minor child and prevent him from "intentionally harming others" if the parent "(a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." *Parsons*, 109 Ariz. at 52. In assessing whether a parent has breached this duty, the supreme court explained that "ordinary rules of negligence" apply: "[T]he injury must have been the natural and probable consequence of the negligent act, that is, a consequence which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such act." *Id.* at 52 (internal quotation omitted).

¶15          To be liable for failure to control one's child, the supreme court held that a parent must have "had knowledge of the child's particular disposition which was such that they should have known that he would commit a certain type of act." *Id*. at 53. In considering the plaintiffs' contention that the defendants' breached their duty to exercise reasonable control over their minor son, the supreme court recounted evidence that the defendants' son had, prior to the underlying assault: threatened to throw rocks at a woman on the street; "acted aggressively toward other children" at school; broken into a classmate's home and shoved her; committed arson; and committed theft. *Id*. at 52. Notwithstanding these prior acts, the supreme court concluded that the evidence "was not sufficient to send the case to the jury on the issue of whether [the defendants] should have had knowledge of [their son's] propensity to commit" the underlying offenses. *Id*. at 54. Clarifying the legal standard, the supreme court reiterated that as a matter of law, a parent is not liable for the acts of his child unless there is evidence that the parent "should have reasonably foreseen" that his child "had a disposition to perform such a violent act." *Id*.

¶16          Arguing the superior court incorrectly applied *Parsons*, Acosta contends the case is factually distinct because, here, the State owed a duty of care to both boys. While Acosta's point is well-taken, there is no dispute that the defendants owed him a duty of care to protect against unreasonable risks of harm, and the superior court expressly recognized that duty in its summary judgment ruling. *See* A.R.S. § 8-529(A)(2) (recognizing that a foster child has a right "[t]o live in a safe, healthy and comfortable placement where the child can receive reasonable protection from harm").

¶17          Instead of applying *Parsons* as part of a duty framework, the superior court looked to *Parsons* to assess whether the defendants had *breached* their duty and *caused* Acosta's eye injury, concluding they did not because the injury was unforeseeable. We agree with the superior court.

¶18          To demonstrate foreseeability, Acosta presented two police reports documenting Michael's prior conduct. Approximately 18 months before the pencil incident, Michael punched and choked a classmate at school. As reflected in the police report detailing the assault, the victim refused medical attention and had no visible marks or bruises. The police officer also noted in his report that when the assistant principal discussed the matter with Michael's biological father, he disclosed that Michael had similar fights with his siblings. Despite the father's statement, the assistant principal expressed "surprise[]" that Michael had been involved in an altercation, stating Michael "did not have a history of violence or fighting."

Three months after the school incident, Michael punched his foster father in the stomach. Again, the victim was not injured. The police report documenting Michael's altercation with his former foster father did not mention any other incidents.

¶19     Citing these reports, Acosta contends the defendants were negligent by placing him in the same bedroom with Michael. We disagree. While Michael had two, documented physical altercations before residing at the Gap Ministries' foster home, and a report of other similar fights with his siblings, none of the incidents involved a weapon or a resulting injury. Guided by *Parsons*, we conclude the nature of Michael's prior physical altercations were not such that the defendants should have reasonably foreseen he might use a weapon to inflict a serious physical injury on a roommate if placed in a shared room.[2]

¶20     Alternatively, Acosta contends the defendants were negligent because Pratt, who was present for the entire confrontation, failed to prevent the verbal dispute from escalating to a physical altercation, notwithstanding that the argument spanned several minutes, providing her "ample" time to intervene. During his deposition, Acosta initially testified that Michael pierced his eye with a pencil about two minutes after he pushed Michael in the closet. But when he was questioned about that timeline, Acosta conceded that only the verbal exchange lasted for a few minutes and the push and stabbing happened "back-to-back." In fact, like Pratt, he testified that the two events happened very "quickly" and may have been separated by only "a few seconds."

¶21     In the year before the pencil incident, Michael had no reported physical altercations, and although he and Acosta had numerous verbal disagreements, it is uncontroverted that those disputes were never physical and that Michael never hurt or threatened Acosta before the pencil incident. Perhaps more important, Acosta admitted that he "provoked" Michael immediately before Michael struck him with the pencil by crossing the room, standing between him and the doorway, and pushing him. In other words, by Acosta's account, Michael did not initiate the physical conflict; rather, he responded to it.

¶22     Moreover, contrary to his assertion that she "did nothing," it is undisputed that Pratt repeatedly asked Acosta to leave the room to

---

[2]     Acosta also claims that undisclosed evidence created a factual issue precluding summary judgment under this theory of negligence. We separately address this argument.

deescalate the situation, but he refused. When Acosta cornered him in the closet, Pratt momentarily lost sight of Michael, but it is uncontroverted that she immediately rushed to separate the boys once they emerged from the closet in a physical struggle.

**¶23** Given the non-injurious nature of Michael's prior physical altercations, the boys' history of verbal disputes without physical violence, and Michael's small stature relative to Acosta's size, there was no basis for Pratt to believe that Michael presented a threat of serious physical injury to Acosta during the few minutes that preceded the push and stabbing. Therefore, no reasonable juror could find that Pratt was negligent by using only verbal commands to deescalate the verbal dispute before Acosta pushed Michael. And because the record reflects that mere seconds separated the push and the stabbing, there is no evidence to substantiate Acosta's claim that Pratt could have intervened to prevent his injury once the dispute turned physical. Put simply, because it was unforeseeable that Michael would inflict serious physical injury on Acosta, the superior court did not err by dismissing Acosta's negligence claim against all defendants under both theories of liability.

## II. Disclosure Rulings

**¶24** Acosta also challenges two of the superior court's disclosure rulings. We review rulings on general discovery and disclosure issues for an abuse of discretion. *State v. Mahoney*, 246 Ariz. 493, 495, ¶ 7 (App. 2019).

### A. Caseworker Notes

**¶25** In response to their renewed motions for summary judgment, Acosta contended for the first time that the defendants failed to comply with their disclosure obligations under Rule 26.1(a)(9). Acosta argued this alleged violation precluded summary judgment. Specifically, he asserted that the undisclosed caseworker notes documenting Michael's conduct may have revealed troubles Michael had before the pencil incident, rendering Michael's underlying conduct foreseeable. In its summary judgment ruling, the superior court declined to address Acosta's allegation of "missing records," citing his failure to raise the issue during the preceding five years of litigation.

**¶26** On appeal, Acosta contends the superior court erroneously relieved the defendants of their affirmative duty to comply with Rule 26.1's disclosure requirements. He asserts the defendants' breached their duty to disclose by failing to produce the caseworker notes that were compiled during the time the boys resided at the Gap Ministries' foster home.

¶27            As prescribed by statute and relevant here, "all personally identifiable information concerning" a foster child "is confidential and shall not be released unless ordered by a superior court judge." A.R.S. § 41-1959(A). To obtain this confidential information, a party "may petition a judge of the superior court" to order its release. A.R.S. § 8-807(K); *see also* A.R.S. § 41-1959(A). When presented with such a request, the court shall review the records in camera and balance the rights of the parties who are entitled to confidentiality . . . against the rights of the parties who are seeking the release of the [confidential] information." A.R.S. § 8-807(K).

¶28            Contrary to Acosta's contention, the State did not have an affirmative duty to disclose the caseworker notes under Rule 26.1. In fact, absent a court order, the State was statutorily barred from disclosing the notes. To obtain the caseworker notes, Acosta needed to comply with A.R.S. § 8-807(K) and petition the court for access, but he failed to do so.

¶29            Moreover, if Acosta wanted to oppose summary judgment based on an inadequate or incomplete disclosure, he "should have requested a continuance or filed an affidavit in compliance with [Rule 56(d)], explaining why he was [] unable to present facts essential to justify his opposition." *Heuisler v. Phoenix Newspapers, Inc.*, 168 Ariz. 278, 281 (App. 1991). By failing to do so, Acosta "in effect conceded that he had sufficient facts to withstand the motion for summary judgment" and waived any claim that the superior court's ruling was premature. *Id.* at 282.

¶30            Finally, contrary to Acosta's repeated claim that the undisclosed caseworker notes would "likely show that [Michael] had a history of violent and injurious conduct," the record reflects no evidence that Michael ever engaged in such conduct. In fact, Michael had no physical altercations *of any kind* while residing at the Gap Ministries' foster home the year before the pencil incident. When deposed, Pratt testified, unequivocally, that Michael had never previously engaged in conduct that caused concern while residing at the Gap Ministries' foster home. Consistent with this testimony, Acosta conceded that Michael had never threatened or harmed him in any way before the pencil incident.

¶31            On this record, Acosta's contention that the undisclosed caseworker notes *may* have revealed that Michael engaged in a pattern of violent conduct involving weapons or resulting in injuries is completely unfounded. "Sheer speculation is insufficient . . . to defeat summary judgment." *Badia v. City of Casa Grande*, 195 Ariz. 349, 357, ¶ 29 (App. 1999). Therefore, the superior court correctly determined that Acosta's claim of a

discovery violation, raised in response to the defendants' renewed motions for summary judgment, did not preclude dismissal of his negligence action.

### B.     Expert Declaration

**¶32**          Next, Acosta contends that he timely and adequately disclosed his expert witness as required under Rule 26.1. He asserts the superior court's finding that he failed to provide a sufficiently detailed disclosure impermissibly required him to "script" his expert's opinion. For this reason, he argues that the court improperly ordered him to pay, as sanctions, the defendants' fees and costs associated with investigation into his expert's opinion.

**¶33**          To comply with its obligations under Rule 26.1(d), a party must disclose the identity of any expert witness it may use at trial. The party must also state "the substance of the facts and opinions to which the expert is expected to testify" and "a summary of the grounds for each opinion." Ariz. R. Civ. P. 26.1(d)(3)(C), (D).

**¶34**          In his first supplemental disclosure statement, submitted 18 months before the defendants initially moved for summary judgment, Acosta disclosed that Timothy Turner would testify as "an expert in child protective service and social service work." Without specifying the alleged standard of care or a factual basis for the alleged breach, Acosta stated that Turner would testify regarding the defendants' "failures . . . that resulted in" his eye injury and opine that the injury could have been avoided had the defendants not placed Acosta "in such a dangerous situation" or provided proper supervision. Appearing to recognize the inadequacy of the disclosure, Acosta stated that the "opinions of this witness will be supplemented." Nonetheless, Acosta failed to supplement the expert's opinion, despite numerous requests from defense counsel to do so.

**¶35**          After the defendants moved for summary judgment, Acosta disclosed Turner's declaration. Unlike the initial disclosure statement, Turner's declaration cited Michael's prior physical altercations, documented in police records, and opined that Michael's history of violence in response to "mild provocation" rendered it foreseeable that his verbal dispute with Acosta would escalate with a "potential risk for a violent assault."

**¶36**          We disagree with Acosta's assertion that his initial, general disclosures were sufficient under Rule 26.1. Without question, Rule 26.1(d) does not require "scripting" of an expert's testimony, *Solimeno v. Yonan*, 224 Ariz. 74, 78, ¶ 14 (App. 2010), but the superior court did not impose such a

standard here. Rather, the court found that Acosta's initial disclosure failed to state the full, developed opinions to which his expert was expected to testify. We agree.

¶37            Notwithstanding its finding, the superior court did not preclude Turner from testifying. Instead, the court permitted the defendants to investigate the expert's updated opinion and sanctioned Acosta with the associated discovery expenses, ultimately ordering him to pay $1,500 in attorneys' fees to both the Gap Defendants and the State Defendants.

¶38            Under Rule 37(c)(3)(A), the court may order a party to pay "the reasonable expenses, including attorney's fees, caused by the failure" to timely disclose as required by Rule 26.1. "The determination of whether the amount of attorney's fees is reasonable is a matter peculiarly within the discretion of [the superior] court." *Solimeno*, 224 Ariz. at 82, ¶ 36 (internal quotation omitted). Absent a ruling that "exceed[s] the bounds of reason," we will affirm. *Id*.

¶39            Applying these principles here, we find no abuse of discretion. Although Acosta contends the sanctions present a hardship, he does not otherwise challenge the amount of the award and we do not conclude that it exceeds the bounds of reason.

## CONCLUSION

¶40            For the foregoing reasons, we affirm. The State Defendants request sanctions under A.R.S. § 12-349(A)(3) and the Gap Defendants request sanctions under ARCAP 25. In our discretion, we deny both requests. We award the defendants their costs incurred on appeal, conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

11