PHILIP DEPASQUALE, JR. *vs.* FRED DELLO RUSSO.

Middlesex.    November 3, 1965. — December 3, 1965.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Parent and Child. Negligence,* Of parent, Fireworks.

In an action for severe burns sustained by the plaintiff when smoke bombs which he had purchased and placed in his trousers' pocket were ignited with a lighted cigarette by the defendant's son while he and the plaintiff were playing with fireworks at a dump, evidence that there had been a frequent use of fireworks by the defendant's son, but only two incidents of misuse by him, both of. which led the defendant to order him to retire to a place more suitable for fireworks, and that the defendant had cautioned him to be careful with fireworks on several occasions, did not warrant a finding that the son had a "tendency" toward dangerous conduct or a finding that the defendant was negligent toward or liable to the plaintiff.

TORT. Writ in the Superior Court dated March 27, 1958. The action was tried before *Bolster,* J.

*David R. White (John P. White, Jr.,* with him) for the defendant.

*David B. Cushman (Santo A. Giampapa* with him) for the plaintiff.

DePasquale *v.* Dello Russo.

SPALDING, J.  The plaintiff, a minor, brings this action of tort by his father as next friend.  We are concerned only with a count in which the plaintiff seeks to recover against the defendant for injuries caused by his son Fred Dello Russo, Jr.  The jury returned a verdict for the plaintiff.  The case comes here on the defendant's exception to the denial of his motion for a directed verdict.

The following is a summary of the pertinent evidence. Fred Dello Russo, Jr. (Fred) and the plaintiff were close friends.[1]  On July 3, 1957, they went to a joke shop in Medford Square and each purchased a number of smoke bombs.  "These smoke bombs are one-half (½) inch paper cylinders approximately three (3) inches long, containing a yellow powder and ignited by a wick protruding from the top.  When the wick is ignited, the powder burns, belching a heavy, yellow smoke and generating substantial heat. Once ignited they burn for several minutes."  Upon purchasing the bombs the two boys went to Dello Russo's home where in a conversation with his father (the defendant) Fred said that he was going to hide half of his smoke bombs so that his younger sister would not find them and was then going to the dump "to fire those remaining." The defendant replied, "all right, be careful."

At the dump the two boys were joined by several friends, all of whom "engaged in play and the firing of smoke bombs and firecrackers."  The plaintiff had three smoke bombs in a pocket of his trousers from which the wicks were protruding.  At one point Fred reached over toward the wicks with a lighted cigarette in his hand.  The plaintiff pushed his hand away, saying, "Are you crazy?" Then, while the plaintiff was talking to another boy he heard a sizzling sound and saw Fred withdrawing his hand, which held a lighted cigarette, from the area of the plaintiff's pocket which contained the smoke bombs.  He then felt a "tremendous amount of heat in the area of his left side and groin and saw dark yellow smoke coming from the

---

[1] Their ages do not appear; they are referred to in the evidence as boys.

lighted . . . bombs.'' The plaintiff, as a result, was severely burned.

Prior to the events of July 3, including the preceding day, the defendant had purchased firecrackers for both his son and the plaintiff. On one of these occasions the boys ignited the firecrackers and threw them on the street near the defendant's place of business. The defendant told them to be careful and to go somewhere else because he was afraid of the reaction of the neighbors and the police. The two boys left the street and continued their activities in the defendant's driveway.

On an earlier occasion the defendant gave his son some ''atomic pearls'' or pellets which, when thrown against a hard object, explode. On the following day Fred and the plaintiff were throwing these pellets from the second floor of the defendant's home at ''people walking by, or a car or something like that.'' The defendant ordered them to stop and to play elsewhere.

The question presented is whether the evidence recited above would warrant a finding of negligence on the part of the defendant and, if so, whether such negligence was the proximate cause of the plaintiff's injuries.

The most recent case dealing with the liability of a parent for the tortious conduct of his minor child is *Caldwell* v. *Zaher,* 344 Mass. 590. There a demurrer was sustained to a declaration in an action brought on behalf of a minor (Jean Caldwell) for injuries alleged to have been caused by the defendants' minor son (David). The declaration alleged that David had a tendency and propensity toward assaulting, accosting, tormenting, and molesting young children; that the defendants were warned and knew, or should have known, that on previous occasions David did assault, accost, torment, and molest other children; that the defendants did nothing to restrain his dangerous propensities; that on or about June 7, 1961, David did assault and molest Jean; that the defendants were negligent in allowing this to take place in that they had taken no steps to restrain his propensities; and that Jean was in-

jured. In reversing the order sustaining the demurrer this court said at page 592: "We are of opinion that in circumstances like the present a parent is under a duty to exercise reasonable care to prevent his minor child from inflicting injury, intentionally or negligently, on others. This duty of parental discipline arises when the parent knows or should know of the child's propensity for the type of harmful conduct complained of, and has an opportunity to take reasonable corrective measures. We have applied this rule in cases where the parent was alleged to have been negligent with respect to his child's possession or use of a gun or rifle. See *Sousa* v. *Irome,* 219 Mass. 273, 276; *Gudziewski* v. *Stemplesky,* 263 Mass. 103, 105–106; *Sojka* v. *Dlugosz,* 293 Mass. 419, 423; *Norlin* v. *Connolly,* 336 Mass. 553, 554. We believe that the principle is equally applicable where the parents' negligence is, as here, based on allegations that they knew of their child's propensity toward assaulting other children and 'did *nothing*' (emphasis supplied) to halt it."

The rifle cases cited by the court do not, taken alone, support the jury's verdict against the defendant here, since none of the fireworks which he procured for his son or permitted him to use were instrumental in causing the plaintiff's injuries. Thus, the plaintiff also relies on the *Caldwell* case, and argues that the jury would have been justified in finding that the defendant was negligent in encouraging and permitting his son's frequent use of inherently dangerous fireworks, that he was made aware by at least two incidents that his son had a tendency to use fireworks in a negligent way, and that his simple admonitions to "be careful" or to play elsewhere were inadequate to satisfy the standard of care which a parent must exercise in such circumstances. The plaintiff argues further that since the defendant's negligence consisted of his failure to take reasonable steps to curb or prohibit his son's known misuse of fireworks, the igniting of the smoke bombs in the plaintiff's pocket was within the scope of the risks which his omissions created. See *Sojka* v. *Dlugosz,* 293 Mass. 419, 423.

We are of opinion that this case should not have gone to the jury. The existence of a "tendency" or "propensity" toward dangerous conduct referred to in *Caldwell* v. *Zaher, supra,* is there unequivocally set forth in the declaration. Here, however, the evidence shows a frequent use of fireworks, with only two incidents of misuse: when Fred was setting off firecrackers in the street and when he was throwing the pellets from the porch "at people . . . or a car." This, we think, falls short of evidence sufficient to establish a "dangerous tendency." The court in the *Caldwell* case also stressed that the defendants allegedly "did nothing" to restrain the type of behavior which resulted in the plaintiff's injury. In the case at bar the defendant did respond to both incidents by ordering his son to retire to a more suitable place for these activities; he also cautioned him on several occasions to be careful. To permit liability to be imposed in these circumstances would constitute a substantial extension of the rule set forth in *Caldwell* v. *Zaher, supra,* a course we decline to adopt. A contrary holding would go far toward exposing parents to liability for the torts of their children solely because of their parenthood. See *Smith* v. *Jordan,* 211 Mass. 269; *McGowan* v. *Longwood,* 242 Mass. 337.

*Exceptions sustained.*
*Judgment for the defendant.*