Sosman, J.
Plaintiff Erik Lyons has brought the present action complaining of injuries he sustained while riding as a passenger in a vehicle owned and operated by defendant Jared Bruun. The complaint also alleges that Jared Bruun’s parents, defendants Jorgen and Renie Bruun, are liable for the negligent supervision of their son with respect to his operation and maintenance of the motor vehicle involved in the accident. Jorgen Bruun and Renie Bruun have moved for summary judgment on the ground that there is no evidence that they knew of any dangerous propensity on the part of their son or that they failed to take corrective action with respect to their son’s use of his vehicle. For the following reasons, the motion is ALLOWED.
Facts
In the early summer of 1995, Jorgen Bruun accompanied his son Jared to inspect a 1979 Jeep that Jared was considering purchasing. Upon viewing the vehicle, Mr. Bruun and Jared observed that the Jeep had no rear seat. Jared was satisfied that he could acquire a “bench seat” for later installation, and he proceeded to buy the vehicle without any seat. At the time of the purchase, Jared was sixteen years old (two months shy of his seventeenth birthday) and had a valid driver’s license. Jared purchased the Jeep in his own name and with his own money, and he obtained his own insurance.
Shortly after purchasing the Jeep, Jared bought a used bench seat from a neighbor and undertook to install it in the rear of the vehicle. Mr. Bruun allegedly helped Jared try to install the seat. However, the rear floor of the Jeep had some metal sheeting that had been welded on over several of the holes through which the rear seat would normally be attached. As a result, only one of the four legs of the bench seat could be bolted on. Because the seat was not securely affixed, Mr. Bruun told Jared that he was not to carry any passengers in the rear seat until he got the seat properly installed. Mr. Bruun advised Jared to take the car to a local mechanic to get the necessary parts and have the mechanic help complete the installation. The vehicle, and all accessories and improvements, were to be paid for by Jared himself, so it was up to Jared to save the necessary funds and get the seat installation completed. Until he did so, Mr. Bruun told Jared that he was not to carry any rear seat passengers.
On one occasion a few weeks thereafter, Mr. Bruun observed Jared pull into the driveway with some of his friends in the Jeep, including at least one passenger *384 seated on the rear bench seat. The seat had still not been securely fixed, and Mr. Bruun confronted Jared in the driveway, in the presence of the other youngsters. He again told Jared that he was not to carry any passengers on that rear seat until it was properly attached.[1]
On July 6, 1995, approximately six weeks after he acquired the Jeep and less than a week after his parents had reprimanded him for carrying passengers in the rear seat, Jared again drove the Jeep with several of his friends riding in the back seat. Plaintiff Erik Lyons was one of those rear seat passengers. The Jeep collided head-on with another vehicle driven by third-party defendant Robert Egan. The bench seat and its passengers, including Erik Lyons, were ejected from the vehicle.
Discussion
Plaintiffs allege that defendants Jorgen and Renie Bruun are liable for negligent supervision of their son Jared. When a parent “knows or should know of the child’s propensity for the type of harmful conduct complained of, and has an opportunity to take reasonable corrective measures,” the parent then has a duty “to exercise reasonable care to prevent his minor child from inflicting injury, intentionally or negligently, on others.” Caldwell v. Zaher, 344 Mass. 590, 592 (1962). In Caldwell, plaintiff alleged that the defendant parents knew that their son had assaulted other children on prior occasions, that the parents had done “nothing” in response, and that the defendant’s son had proceeded to attack plaintiff. Those allegations were held sufficient to withstand a demurrer.
In order to bring this case within the doctrine enunciated in Caldwell, plaintiff must first show that Jorgen and Renie Bruun knew of Jared’s “propensity” to engage in dangerous conduct. A parent’s knowledge of some isolated instance of misbehavior or disobedience does not suffice to show knowledge of any dangerous “propensity.” In DePasquale v. Dello Russo, 349 Mass. 655 (1965), defendant knew that his minor son had, on two separate occasions, handled firecrackers in a careless manner. On one occasion, the father had seen the son throwing firecrackers into the street. On another occasion, he had seen his son throwing firecrackers at people and at passing cars. In response, defendant told his son not to play with firecrackers around the street and to “be careful” with them. At some point after these two incidents, the child and his friends had purchased some smoke bombs, and they told the father that they were going to go light them near the dump. The father replied, “All right, be careful.” At the dump, the defendant’s son proceeded to ignite three of his friend’s smoke bombs while they were still in the friend’s pants pocket, resulting in significant bum injuries. The father was sued on a theory of negligent supervision. The Supreme Judicial Court ruled that two instances of known misuse of firecrackers did not amount to a “dangerous tendency” or “propensity.” 349 Mass. at 655. The Court also pointed out that Caldwell involved parents who had literally done “nothing” in response to their son’s attacks on other children, and that the father in DePasquale had responded to his son’s careless play by ordering him to use firecrackers elsewhere and to be careful with them. The court thus distinguished Caldwell and observed that extending Caldwell to the facts in DePasquale “would go far toward exposing parents to liability for the torts of their children solely because of their parenthood.” 349 Mass. at 659.
The present case is squarely on point with DeP-asquale. Plaintiff has evidence of only a single instance where Jorgen and Renie Bruun observed their son carrying passengers in the unsecured rear bench seat. A single instance of negligent conduct on the part of a minor does not suffice to show a “propensity” or “tendency” towards such conduct. Moreover, as in DePasquale, Jorgen and Renie Bruun responded to their son’s conduct by directing him not to do that again and explaining to him that carrying passengers on the bench seat was unsafe. They are not parents who did “nothing” after observing Jared’s negligence.
Plaintiff also contends that Mr. Bruun’s assistance in the partial installation of the bench seat makes him liable for the unsafe condition of that seat. In essence, plaintiff now argues that Mr. Braun negligently installed the seat. There are two defects to this argument. The first is that the complaint as drafted specifies that the sole theory on which Jorgen and Renie Bruun are being sued is one of negligent supervision. Complaint, ¶18 (“Jorgen and Renie Braun, parents of Derek and Jared Bruun, negligently supervised their sons Derek and Jared Bruun relative to the maintenance and operation of the Jeep”) and ¶19 (“As a result of their negligent supervision, the plaintiff, Erik Lyons sustained serious permanent injuries and damages”). In fact, the complaint expressly alleges that it was Derek Braun, Jared Bruun’s older brother, who “negligently maintained and/or modified the Jeep so as to render its rear bench seat unsafe to passengers.” Complaint, ¶14. There is no allegation in the Complaint that Mr. Bruun did anything with the Jeep, let alone that he performed some negligent repair or modification on the vehicle.
The allegation that Mr. Braun himself participated in the seat installation surfaced during the deposition of plaintiff Erik Lyons in June 1998, at which time Erik claimed that he had come over to Jared’s house and seen Jared and his father installing the bench seat in the Jeep.[2] Although this information concerning Mr. Bruun’s participation in the seat installation rested with plaintiff himself, no such allegation was made in the original complaint. At no time has plaintiff sought to amend his complaint to allege negligence on the part of Mr. Bruun in the actual installation of the seat. The deadline for any such amendment has long since passed, and plaintiff should therefore be held to *385 the single theory of negligence articulated against Mr. Bruun in the original complaint — i.e., negligent supervision.
Secondly, plaintiff points to nothing that Mr. Bruun did carelessly with respect to the attempted installation itself — i.e., failure to tighten some component, installation of a component upside down or backwards, use of an incorrect tool or the wrong size component, assembly of pieces in the wrong order, etc. Rather, the newly articulated theory that Mr. Bruun was negligent in the installation of the rear seat is merely another way of stating that Mr. Bruun was aware of the fact that the seat was not properly installed in his son’s car. Whether it was in the course of inspecting the car, in the course of advising his son as to how to install the seat, or in the course of helping him try to install the seat, Mr. Bruun learned that several of the holes through which the seat would normally be fastened were covered over with sheet metal and that the installation of the seat was therefore beyond his son’s capability. Recognizing that the installation could not be properly completed at home, he advised Jared to get assistance from their local mechanic and told Jared not to carry passengers in the back seat until that work was done. An attempted installation revealing that proper installation requires additional assistance, followed by advice to the car’s owner that the installation has not been completed and a warning that that component of the car should therefore not be used, is not “negligent” installation.
Assuming that Mr, Bruun tried to assist his son with the installation, and thereby determined that his son needed professional help to complete the installation, the fact remained that the car was his son’s. Jared’s failure to heed his father’s warning that the installation needed to be completed before the back seat was used does not mean that the father’s alleged participation in the attempted installation was negligent. Rather, the claim of “negligent installation” is merely a further claim for negligent supervision, namely, a claim that it was up to Mr. Bruun to prevent his son from giving rides to back seat passengers when he knew that the seat had not been properly installed. For the reasons stated above, plaintiff does not have evidence to support a claim of negligent parental supervision. A belated attempt to recast that claim as a claim of negligence in the installation itself does not avoid summary judgment.
ORDER
For the foregoing reasons, Defendants Jorgen Bruun and Renie H. Bruun’s Motion for Summary Judgment is ALLOWED.

 Mr. Bruun characterized this confrontation as somewhat angry on his part. He also recalls telling his son ;o remove the seat. Jared recalls his parents both telling him, after seeing the passengers in the back seat, that he was not to have any passengers back there because it was not safe. He describes his mother as being particularly "adamant” on the subject at that time. However, he does not recall being told to remove the seat.

 Jared Bruun testified at his deposition that his father did not help install the seat, but that his father did look at where the seat would go and review with him how it would need to be attached. Mr. Bruun has filed an affidavit stating that his son was responsible for installing the rear seat and that he did not supervise his son with respect to that installation.