2005 OK 15

**In the Matter of J.L.M., an alleged delinquent child,**

**Stanley McGuffin, Appellant,**

v.

**State of Oklahoma, Appellee.**

**No. 100,111.**

Supreme Court of Oklahoma.

March 8, 2005.

Michael D. Tipps, Ardmore, OK, for Appellant.

Mitchell D. Sperry, District Attorney, and Gary Brown, Assistant District Attorney, Marietta, OK, for Appellee.

COLBERT, J.

¶ 1 The material facts are not disputed. J.L.M. was born March 3, 1989. When he was about three months old, his mother obtained a divorce from his father in Love County, Oklahoma. The divorce decree awarded custody to the mother and reasonable visitation to the father. J.L.M. has not

lived with his father since the divorce and has seen his father only four times since 2000. In 2003, when J.L.M. was fourteen years old, he broke into the Marietta High School by removing a screen and entering through a window. While unlawfully using a mobile radio that was capable of receiving transmissions on frequencies used by law enforcement agencies, he vandalized several rooms in the school building and destroyed a server and other property belonging to the school. The cost to repair the damaged building and contents was $11,076.00.

¶ 2 On September 22, 2003, the trial court entered an order that adjudicated J.L.M. delinquent, made him a ward of the court, placed him in the custody of Oklahoma Juvenile Affairs and detained him pending placement. The trial court also set a hearing on the amount of restitution due and how it should be paid. On October 28, 2003, at the completion of the hearing, the trial court ordered restitution in the amount of $2,500, to be paid one half by the mother and one half by the father. The father appealed and we retained the appeal.

¶ 3 The applicable statute provides in part:

A. The following kinds of orders of disposition may be made in respect to children adjudicated in need of supervision or delinquent:

* * *

8. With respect to a child adjudicated a delinquent child, the court may:

* * *

c .... order the parents or custodial parent of any child living with the parents or custodial parent at the time of the criminal or delinquent act of the child to remit the amount of restitution ordered by the court. . . .

10 O.S.2001 § 7303–5.3.

## ISSUE AND STANDARD OF REVIEW

¶ 4 The issue is whether subsection (A)(8)(c) authorizes a trial court to order a non-custodial parent to pay restitution for damage caused by a child who was not living in the non-custodial parent's home at the time of the delinquent act. Because this is an issue of statutory construction our standard of review is *de novo.* *Fanning v. Brown,* 2004 OK 7 ¶ 8, 85 P.3d 841, 845. Under this standard we have plenary, independent and non-deferential authority to determine whether the trial court erred in its legal ruling. *Id.*

## ANALYSIS

¶ 5 The fundamental rule of statutory construction is to ascertain and give effect to legislative intent, and that intent is first sought in the language of a statute. *World Publishing Co. v. Miller,* 2001 OK 49 ¶ 79, 32 P.3d 829, 832. When legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, we must apply rules of statutory construction. *Id.* The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. *See* 2A Singer, *Statutes and Statutory Construction* § 455.02 (6th ed 2000). Whether language is ambiguous is a question of law. *American Economy Ins. Co. v. Bogdahn,* 2004 OK 9 ¶ 11, 89 P.3d 1051, 1054. In construing ambiguous statutory language, we do not limit ourselves to the consideration of a single word or phrase. *World Publishing Co. v. Miller,* 32 P.3d at 832. Rather, we look to the various provisions of the relevant legislative scheme to ascertain and give effect to the legislative intent and the public policy underlying that intent. *Id.*

¶ 6 We agree with the trial court that the language at issue is ambiguous. It could be read to authorize a trial court to order restitution from only the custodial parent with whom the child was living at the time of the delinquent act, or from both parents.[1]

¶ 7 The ambiguous language is: "The court may order the parents **or** custodial parent of any child living with the parents **or** the cus-

---

1. The trial court said: "I have struggled with the wording in this and I agree it is—I consider it not entirely clear." The trial court then chose a construction of the language that allowed him to require both parents to pay restitution, explaining that he believed any other construction would not be fair: "I believe it *can* be read to require both parents to pay restitution. . . . I think any other reading would be inherently unfair . . . ." (emphasis added).

todial parent at the time of the criminal or delinquent act ... to remit the amount of restitution ordered by the court." (emphasis added). The Legislature's use of the disjunctive word "or" indicates its intent that either the custodial parent alone (with whom the child was living), or both parents, may be ordered to pay restitution. The word "parents" stands by itself and is not modified by the phrase "custodial parent". The words "living with" modify both "parents" and "custodial parent." Further, the construction of the word "parents" to include a non-custodial parent with whom the child was not living is consistent with other language in subsection (A)(8)(c) which allows the court to "consider any hardship of such order on the parents **or** custodial parent." The subsection also provides that "if the court orders the parents **or** custodial parent to remit the amount of restitution," the court shall also order the child to perform community service to earn the amount paid by such child's "parents **or** custodial parent." Again, non-custodial parents are not excluded.

¶ 8 In interpreting similar language, the Court of Civil Appeals in *In re C.A.R.*, 1994 OK CIV APP 124, 882 P.2d 582, found that the word "parents" as used with respect to a deprived child under 10 O.S. § 1101(4)(b) was not modified by the phrase "in whose care the child may be." Section 1101(4)(b) defines a deprived child as one who, among other things, "does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, cruelty, or depravity on the part of his **parents, legal guardian or other person in whose care the child may be.**" (emphasis added). After interpreting the statutory language, the court affirmed the trial court's finding that the children were deprived as to the father even though he did not have custody of the children and a protective order prevented him from going near the mother. The court said: "A father may not delegate parental obligations to the mother and be held harmless when she neglects these obligations." *Id.* at ¶ 13, 882 P.2d at 585. Similarly, in *In re C.T.*, 1999 OK CIV APP 55, 983 P.2d 523, a non-custodial father who did not live with his children challenged the trial court's finding that he had neglected them.

He argued he could not do anything to help the children since he was not the custodial parent. The Court of Civil Appeals rejected his argument, saying: "Father, though he did not have physical custody of the children, was not divested of his parental responsibility to provide for and protect his children." *Id.* at 526.

¶ 9 Other jurisdictions have used virtually identical language in holding that a parent cannot avoid responsibility by delegating parental responsibilities to others. *See, e.g., In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329, 1333 (1984) (adoption case—divorced father had been awarded reasonable visitation and ordered to pay child support, wife had been awarded custody; wife later obtained protective order against ex-husband; despite absence of custody and protective order, father is not entitled to disregard the child's welfare); *In re Kimsey*, 208 Neb. 193, 302 N.W.2d 707, 711 (1981) (termination of parental rights—both parents have duties inherent in the parent-child relationship; father cannot avoid responsibility by blaming mother's failure as a housekeeper and mother); *In re O'Donnell*, 207 Neb. 367, 299 N.W.2d 428, 431 (1980) (termination of parental rights—court rejected father's argument that mother was responsible for children's poor sanitary conditions and poor physical hygiene); *Johnson v. Varney*, 2 Ohio St.2d 161, 207 N.E.2d 558, 561 (1965) (adoption case—natural mother who did not have custody of child or pay child support nevertheless had duty to give personal care and attention to her child); *In re C.P.*, 103 N.M. 617, 711 P.2d 894, 899 (1985) (termination of parental rights—although evidence was directed primarily at the mother's neglect, it is also evidence of father's past neglect; father may not delegate parental obligations to the mother and then be held harmless when she neglects those obligations).

¶ 10 We believe the public policy enunciated in these decisions is consistent with the Legislature's intent in enacting § 7303–5.3(A)(8)(c). Accordingly, we hold that § 7303–5.3(A)(8)(c) authorizes a trial court to order a non-custodial parent to pay restitution for damage caused by a child who

was not living in the non-custodial parent's home at the time of the delinquent act.[2]

## TRIAL COURT ORDER OF RESTITUTION AFFIRMED.

WINCHESTER, V.C.J., LAVENDER, HARGRAVE, EDMONDSON and TAYLOR, JJ., concur.

WATT, C.J., OPALA and KAUGER, JJ., dissent.

2. There is a similar statute in Oklahoma Statutes, Title 23 Damages, which provides:

> A. The state or any county, city, town, municipal corporation or school district, or any person, corporation or organization, shall be entitled to recover damages in a court of competent jurisdiction from a parent or parents of any child under the age of eighteen (18) years when the child is living with the parent or parents at the time of the act, and commits any criminal or delinquent act resulting in bodily injury to any person or damage to or larceny of any property, real, personal or mixed, belonging to the state or a county, city, town, municipal corporation, school district, person, corporation or organization. The amount of damages awarded pursuant to this subsection shall not exceed Two Thousand Five Hundred Dollars ($2,500.00).
>
> B. Any victim, or the victim's representative in the event of the victim's death, shall be entitled to recover damages in a court of competent jurisdiction from any person convicted of a violation of subsection B of Section 1273 of Title 21 of the Oklahoma Statutes or as otherwise allowed by law. [Section 1273(B) deals with a parent or guardian permitting a child to possess a rifle or shotgun.]
> 23 O.S. § 10.

Despite the dissenting opinion's statement to the contrary, this damages statute is not applicable to the instant case for at least four reasons. First, it applies only in civil court proceedings, not in juvenile court proceedings. *See Westlake Presbyterian Church, Inc. v. Cornforth,* 1996 OK CIV APP 159, 940 P.2d 1208, *cert. denied* Apr. 2, 1997. Second, it is a general statute and therefore does not control over the specific statute, 10 O.S. 7303–5.3(A)(8)(c). *Duncan v. Oklahoma Dept. of Corrections,* 2004 OK 58, ¶ 6, 95 P.3d 1076, 1079. Third, it was enacted in 1957; the specific statute was enacted in 1995; the more recent enactment controls over the earlier one. *Id.* Fourth, even if 23 O.S. § 10 has any applicability whatsoever, which is does not, it is ambiguous in the same way that 10 O.S. § 7303–5.3(A)(8)(c) is ambiguous.

1. The pertinent terms of 10 O.S.2001 § 7303–5.3 are:

> A. The following kinds of orders of disposition may be made in respect to children adju-

OPALA, J., dissenting.

¶ 1 The court holds today that the terms of 10 O.S.2001 § 7303–5.3(A)(8)(c)[1] authorize the imposition of liability upon a parent for harm occasioned by the crime or delinquency of a child not living with that parent at the time of the harm-dealing event. **I recede from the court's pronouncement.** I would pronounce that the provisions of § 7303–5.3(A)(8)(c),[2] construed together with those of 23 O.S.2001 § 10(A),[3] restrict vi-

> dicated in need of supervision or delinquent:
> \* \* \*
> 8. With respect to a child adjudicated a delinquent child, the court may:
> \* \* \* \*
> c. if it is consistent with the welfare of the child, **require community service or restitution or both community service and restitution for acts of delinquency.** The immunities provided by Sections 227 and 228 of Title 57 of the Oklahoma Statutes shall apply to community services directed pursuant to this section. The court may order the parents or custodial parent of any child living with the parents or custodial parent to supervise the performance of community service by the child. **The court may order the parents or custodial parent of any child living with the parents or custodial parent at the time of the criminal or delinquent act of the child to remit the amount of restitution ordered by the court.** The court may consider any hardship of such order on the parents or custodial parent of the child. The parents or custodial parent may be represented by an attorney in the matter of the order for remittance of the restitution by the parents or custodial parent. \* \* \* \*
> (emphasis added).

2. Because of its incorporation into Chapter 73 of Title 10, § 7303–5.3 **must** be considered a part of the Oklahoma Juvenile Code. 10 O.S.2001 § 7301–1.1 *et seq.*

3. The pertinent terms of 23 O.S.2001 § 10(A) are:

> A. The state or any county, city, town, municipal corporation or school district, or any person, corporation or organization, **shall be entitled to recover damages** in a court of competent jurisdiction **from a parent or parents of any child under the age of eighteen (18) years when the child is living with the parent or parents at the time of the act,** and commits any criminal or delinquent act resulting in bodily injury to any person or damage to or larceny of any property, real, personal or mixed, belonging to the state or a county, city, town, municipal corporation, school district, person, corporation or organization. The amount of damages awarded pursuant to this

carious status-based parental tort liability to custodial parents with whom the offending child was living at the time of the injurious event.

I

THE *IN PARI MATERIA* LIABILITY PROVISIONS OF 10 O.S.2001 § 7303–5.3(A)(8)(c) AND THOSE OF 23 O.S.2001 § 10(A) MUST BE CONSTRUED TOGETHER SO THAT THE SAME LIABILITY PARAMETERS WILL APPLY WHETHER THE SUIT IS PROSECUTED IN THE JUVENILE–LAW DIVISION OR UPON THE GENERAL CIVIL (OR SMALL CLAIMS) DOCKET OF THE DISTRICT COURT.

¶ 2 Statutes dealing with the same subject matter are generally viewed as *in pari materia* and must be construed together as a harmonious whole so as to give effect to each provision.[4] All legislative enactments *in pari materia* are to be interpreted together as forming a single body of law that will fit into a coherent symmetry of legislation.[5] Whenever a legislative act may by judicial interpretation become vulnerable to a fundamental-law infirmity, but through some other construction of the enactment's text the constitutional flaws and uncertainty could be avoided, it is this court's duty to give the statute that meaning which will free its text (or application) from constitutional doubt.[6] These principles stand ignored by today's opinion.

¶ 3 The sole issue before us now is whether and to what extent noncustodial parents (or parents with whom the child was not living at the time of the harm's occurrence) are liable for harm occasioned by a child's criminal or delinquency offense.

¶ 4 The provisions of § 7303–5.3(A)(8)(c) and those of § 10(A) both relate to vicarious status-based parental tort liability and should be declared to be *in pari materia*. The **outer limit of that legal responsibility** must be drawn by construing together the liability provisions of both statutes. Section 7303–5.3(A)(8)(c) creates a restitutional remedy that third parties may invoke in the juvenile-law division of the district court and confers upon that division the power to entertain restitution claims. The provisions of § 7303–5.3(A)(8)(c) as well as those of § 10(A) address themselves to the **range of vicarious status-based parental tort liability**[7] for the harm occasioned by a child's crime or delinquency. By both cited sections parents with whom the delinquent child was not living at the time of the harmful event are **explicitly and unambiguously excluded from responsibility**.[8] Although § 10(A) is

subsection shall not exceed Two Thousand Five Hundred Dollars ($2,500.00). * * * (emphasis added).

4. The Latin phrase *"in pari materia"* means "upon the same matter." BLACK'S LAW DICTIONARY 794 (7th ed.1999); *Mustain v. Grand River Dam Authority*, 2003 OK 43, ¶ 23, 68 P.3d 991, 999; *Culbertson v. McCann*, 1983 OK 57, ¶ 14, 664 P.2d 388, 391 (citing *DeGraffenreid v. Iowa Land and Trust Co.*, 95 P. 624, 639, 20 Okl. 687 (1908)); *Letteer v. Conservancy Dist. No. 30*, 1963 OK 218, ¶ 14, 385 P.2d 796, 801; Ronald B. Brown & Sharon J. Brown, STATUTORY INTERPRETATION· THE SEARCH FOR LEGISLATIVE INTENT 4.6 at 45 (National Institute for Trial Advocacy 2002).

5. *Sharp v. Tulsa County Election Bd.*, 1994 OK 104, ¶ 11, 890 P.2d 836, 840; *Johnson v. Ward*, 1975 OK 129, ¶ 22, 541 P.2d 182, 186; *Letteer v. Conservancy Dist.*, 1963 OK 218, ¶ 14, 385 P.2d 796, 801.

6. When two different meanings may be ascribed to a statute through judicial construction, the court must arrive at that meaning which will make the enactment impervious to constitutional

attack. *State ex rel. Macy v. Board of County Com'rs of County of Oklahoma*, 1999 OK 53, ¶ 16, 986 P.2d 1130, 1139; *Strelecki v. Oklahoma Tax Com'n*, 1993 OK 122, ¶ 23, 872 P.2d 910, 921; *Earl v. Tulsa County Dist. Court*, 1979 OK 157, ¶ 8, 606 P.2d 545, 548; *Wilson v. Foster*, 1979 OK 45, ¶ 16, 595 P.2d 1329, 1333 (overruled on other grounds); *Neumann v. Tax Commission*, 1979 OK 64, ¶ 7, 596 P.2d 530, 532; *Special Indemnity Fund v. Dailey*, 1954 OK 167, ¶ 9, 272 P.2d 395, 396–97 syl. 1; *Chicago, R.I. & P. Ry. Co. v. Beatty*, 1911 OK 332, 118 P. 367, 369 syl 2.

7. "Vicarious liability" is imposed by law when one person is made answerable for the actionable conduct of another. *Braden v. Hendricks*, 1985 OK 14, ¶ 18, n. 24, 695 P.2d 1343, 1351, n. 24. **"Status-based liability"** means here that the liability attaches solely by reason of the parent-child status. It is imposable by the mere existence of the parental relationship.

8. The trial judge was informed (at the restitution hearing) that § 10(A), the liability-imposing statute, is "directly on point" and explicitly excludes from responsibility those parents with whom the

incorporated into the body of statutory law under Title 23, designated as "Damages," its across-the-board impact cannot be abridged. No special significance may be ascribed to the specific location of statutory provisions in the decennial compilation. The topical place assigned to an enactment in the assembled body of legislation does not restrict the force and effect of its terms to subjects under which the statute is carried into the compilation.[9] When **ignoring § 10(A)** to give **exclusive deference to** § 7303–5.3(A)(8)(c), the trial court impermissibly freed itself of obedience to a binding command of statutory interpretation.

## II

## THE EQUAL PROTECTION CLAUSE AND THE OKLAHOMA CONSTITUTION, ART. §§ 32, 46 AND 59, REQUIRE THAT VICARIOUS LIABILITY OF THE PARENTS BE THE SAME IN ALL DIVISIONS OF THE DISTRICT COURT

¶ 5 For the purpose of imposing upon the parents vicarious liability for the harm inflicted by criminal or delinquency offense of their child the parameters of responsibility to be imposed must be the same in **all divisions of the district court** in which a claim may be brought. To craft an entirely different regime of liability for the juvenile-law division from that which governs cases brought upon the general civil (or small claims) docket would create unequal forensic exposure for defending parents. That inequality of treatment, if allowed to exist, would offend the Equal Protection Clause and several provisions of the Oklahoma Constitution.[10] The extent of imposable vicarious liability for the same harmful event may not vary from one to another division of the court in which the claim may be filed. It must remain the same in all divisions.[11]

¶ 6 I would hence conclude that the provisions of § 7303–5.3(A)(8)(c) and those of § 10(A), the two statutes *in pari materia*, must be construed together to give their pertinent provisions the very same definition of vicarious parental tort liability and make them impervious to constitutional attack. Because the terms of both cited sections **explicitly and unambiguously exclude** a noncustodial parent from tort liability for the child's harm inflicted by crime or delinquency, I would reverse that part of the trial court's order—now before us for review—which imposes responsibility in restitution upon the parent with whom the child was not living at the time of the harm-dealing event.

## III

## THE PROVISIONS OF § 7303–5.3(A)(8)(c) AND THOSE OF § 10(A) MUST CONTROL HERE TO THE EXCLUSION OF ANY COMMON LAW

¶ 7 Another reason why we must not ignore here the statutory liability provisions in

harm-dealing children were not living at the time of the offending event. Having been informed of the statute, the trial judge was under a duty to assess its impact on the case before him. No such assessment was made in the restitution order. The only explanation given at the nisi prius hearing is that the trial judge considered § 7303–5.3(A)(8)(c) to be "the controlling statute." Because the parameters of the § 10(A) liability stand imposed by its terms in a mandatory manner, the trial judge was duty-bound to follow the legislative command of that section. The trial judge's contrary view **impermissibly circumscribed the force of § 10(A).** That section's across-the-board impact cannot be diminished. See authorities cited in note 11 *infra*.

9. *Johnson v. Tony's Town Mister Quik*, 1996 OK 138, ¶ 5, 915 P.2d 355, 357; *Harber v. Shaffer*, 1988 OK 45, ¶ 9, 755 P.2d 640, 642; *Church v. Church*, 1982 OK 147, ¶ 4, 657 P.2d 151, 152;

*McCracken v. City of Lawton*, 1982 OK 63, ¶ 6, 648 P.2d 18, 20; *WRG Const. Co. v. Hoebel*, 1979 OK 125, ¶ 7, 600 P.2d 334, 336; *Green v. Green*, 1957 OK 70, ¶ 12, 309 P.2d 276, 278.

10. Equal Protection Clause of the 14th Amend., U.S. Const.; Art. 5 §§ 32, 46, 59, Okl. Const.; *Anderson v. Walker*, 1958 OK 297, 333 P.2d 570, 571; *Crawford v. Young*, 1964 OK 247, 397 P.2d 497; *Wilson v. Foster*, 1979 OK 45, ¶¶ 13–15, 17, 595 P.2d 1329, 1332–33. In *Anderson, supra*, the court held that the statutory definition of a category of persons who stand amenable to judicial treatment as juveniles must be the same for both classes of court which were then competent to entertain juvenile proceedings—the statutory juvenile court and the county court acting *qua* juvenile court.

11. *Id.*

both cited sections is dictated by the compelled choice of legislation over the common law as a legal source to be invoked for application here. While the latter would generally govern one's responsibility in tort, the entire perimeter of vicarious status-based parental liability for a child's crime or delinquency **stands** presently **preempted by the text of § 10(A),** as supplemented by the later-enacted § 7303–5.3(A)(8)(c). Because these two sections, when construed together, clearly control the outer limit of the parents' vicarious status-based tort accountability, and there are no common-law antecedents [12] to be modified or abrogated,[13] the entire field is now firmly placed beyond judicial tinkering by any attempted common-law development that is in discord with the text of these sections.[14]

### IV

### THE DISSENTER'S RESPONSE TO THE COURT'S CRITICISM

¶ 8 For the following reasons I conclude that the court's criticism of this dissent lacks merit. In response to the court's articulated critique (in footnote 2, ¶ 10 of the court's opinion) I submit the answers that follow.

¶ 9 As for the **first** ground of the court's disagreement,[15] my answer is: The liability regime may not differ just because the restitution claim is entertained by a district court division different from that which administers the juvenile code. Liability **for the same act** or omission cannot be made dependent upon the docket on which the claim was filed by the clerk.[16] A contrary rule would permit one to dictate the source of substantive law to govern a claim.

¶ 10 As for the court's **second** ground,[17] I offer: When the provisions of § 10(A) and those (which stand *in pari materia*) in § 7303–5.3(A)(8)(c) are construed together as a harmonious whole, the terms of vicarious status-based parental tort liability must be found to be the same. There is simply **no pertinent text** anywhere in § 7303–5.3(A)(8)(c) that is contrary to that of § 10(A). Moreover, neither section may be labeled as "general" or "specific;" they are clearly *in pari materia*. This is so because they both relate to the same subject—that of vicarious status-based parental tort liability for harm occasioned by the child's criminal or delinquency offense.

¶ 11 As for the court's **third** ground,[18] my answer is: No element of vicarious parental

12. **Status-based civil liability** of parents to third persons for harm occasioned by their children is an utter stranger to the common-law tradition. *Stumpf v. Montgomery,* 1924 OK 360, 101 Okl. 257, 226 P. 65, 66; *Vance By and Through Vance v. Thomas,* 1986 OK CIV APP 3, 716 P.2d 710, 711; *Parsons v. Smithey,* 15 Ariz.App. 412, 489 P.2d 75, 77 (Ariz.App.1971). Traceable **neither** to the English beginnings of the Anglo–American legal system **nor** to any Oklahoma jurisprudential sources, the norm of **vicarious responsibility** in tort is **purely a creature of legislation.** *See in this connection* Note, *The Development and Current Status of Parental Liability for the Torts Of Minors,* 76 N.Dak. L.Rev. 89 (2000), which discusses **four exceptions** to the **common-law notion** that parents are generally not liable for the tortious acts of their children. These exceptions are: 1) where the parent entrusts the child with an instrumentality which, because of the child's lack of maturity, judgment or experience, may become a source of danger to others; 2) where the child committing a tort is acting as the servant or agent of its parents; 3) where the parent consents, directs, or sanctions the wrongdoing; and 4) where the parent fails to use reasonable care in preventing one child from injuring others. The latter exception is found in Restatement (Second) of Torts § 316.

13. The rule is different when pre-existing common law is in place and the enactment fails clearly to abrogate the extant unenacted law on the subject. *State v. One 1965 Red Chevrolet Pickup,* 2001 OK 82, ¶ 13, 37 P.3d 815, 820 (**the common law remains in full force unless an enactment explicitly provides to the contrary**).

14. 12 O.S.2001 § 2; *State Mut. Life Assur. Co. of Amer. v. Hampton,* 1985 OK 19, 696 P.2d 1027, 1036 (Opala, J., concurring).

15. The court rests its first ground for disagreement on the view that § 10(A) applies only to claims upon the civil docket of the district court, not to those lodged in the juvenile-law division.

16. *Anderson v. Walker* at 571, *supra* note 10.

17. The court's explanation of disagreement on the second ground is that § 10(A) is a general statute and does not govern over the specific statute § 7303–5.3(A)(8)(c).

18. The court's third ground for disagreement rests on the notion that the more recent enactment, § 7303–5.3(A)(8)(c), controls over the earlier statute, § 10(A).

tort liability administered in the juvenile-law division may be allowed to differ from that which will apply to a claim brought upon the general civil (or small claims) docket of the district court without offending the provisions of the Equal Protection Clause and of Art. 5 §§ 32, 46 and 59, Okl. Const.[19]

¶ 12 As for the court's **fourth** ground,[20] I submit: I agree with the other dissenter that the liability provisions of § 7303–5.3(A)(8)(c) are unambiguous. In the language of § 7303–5.3(A)(8)(c), which describes the parties who shall bear vicarious liability as "parents or custodial parent," the clear implication is that the legislature means "**parents**" where the child lives in **a nuclear family,**[21] and "**custodial parent**" where the child's parents are not living together. Any other meaning-giving (such as that ascribed by the court in ¶ 7 of its opinion) would indeed be regarded as a construction patently stretched for the result sought to be attained. The terms of § 10(A) are similarly unambiguous when they refer to the liability-bearing persons as "**parents**" or "**parent with whom the child was living.**" It is patent that if the child lives with a nuclear family, the term "parents" applies, but if the child is living with only one parent who has its custody, the latter term governs.

## V

## SUMMARY

¶ 13 The two pertinent statutes, 10 O.S. 2001 § 7303–5.3(A)(8)(c) and 23 O.S.2001 § 10(A), both of which deal with vicarious status-based parental tort liability, are *in pari materia* and must be construed together as a harmonious whole. In the district court's juvenile-law division as well as in cases pressed upon the general civil (or small claims) docket of that court, the liability-limiting terms of both sections, construed together, will determine the sweep of vicarious status-based parental tort accountability for a child's harm occasioned by its criminal or delinquency offense. Where, as here, there are no common-law antecedents for gauging a parent's vicarious status-based tort responsibility, the legislature, by the enactment of a statute that defines the perimeter of that new liability, must clearly be deemed to have occupied the entire field. No part of the now-covered field may thereafter be invaded by attempted alterations through common-law developments.

¶ 14 I would hence reverse that part of the nisi prius order by which vicarious status-based tort liability in restitution stands imposed upon that parent with whom the child was not living at the time of the harm-dealing event.

KAUGER, J., with whom WATT, C.J. and OPALA, J., join, dissenting.

¶ 1 I dissent from the majority's imposition of restitution liability on a non-custodial parent pursuant to 10 O.S.2001 § 7303–5.3(8)(c).[1] The majority uses rules of statutory construction to create an exception not existing in the statutory provision. Only when the legislative intent cannot be ascertained from the statutory language, *i.e.* in cases of ambiguity or conflict, are rules of statutory construction employed.[2] Where a statute's lan-

---

19. *Anderson v. Walker* at 571, *supra* note 10.

20. For its fourth ground of disagreement, the court explains that, even assuming § 10(A) has some applicability, its liability provisions are ambiguous to the same extent as those of § 7303–5.3(A)(8)(c).

21. The statute's use of a disjunctive in the phrase "parents or custodial parent" clearly recognizes a dichotomous division of accountable parents into the following classes: (1) those living together in a nuclear family and (2) those with custodial rights who do not cohabit with the child's noncustodial parent.

1. Title 10 O.S. Supp.2002 § 7303–5.3(8)(c) provides in pertinent part:

"... With respect to a child adjudicated a delinquent child, the court may:
... c .... order the parents or custodial parent of any child living with the parents or custodial parent at the time of the criminal or delinquent act of the child to remit the amount of restitution ordered by the court...."

Because the statute was amended in 2002, references are to the current version of the statute.

2. *Keating v. Edmondson*, 2001 OK 110, ¶ 8, 37 P.3d 882; *State ex rel. Oklahoma Dept. of Human Serv. v. Colclazier*, 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers*, 1993 OK 19, ¶ 11, 848 P.2d 1146.

guage is plain and unambiguous and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning.[3] The clear statutory language provides that liability may be imposed on any parent or custodial parent of any child **living with the parents or a custodial parent.** It does not impose liability upon parents whose children do not reside in the parent's home.

3.  *Neer v. State ex rel. Oklahoma Tax Comm'n,* 1999 OK 41, ¶ 16, 982 P.2d 1071; *C.H. Leavell &* *Co. v. Oklahoma Tax Comm'n,* 1968 OK 127, ¶ 16, 450 P.2d 211.