¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Do the new qualifications for non-lawyer members of the Judicial Nominating Commission, found in Okla. Const. art. 7B, § 3, adopted by State Question No. 752, apply to current Commission members who were appointed prior to the adoption of State Question No. 752?
 2. What does the term "immediate family" in Okla. Const. art. 7B, § 3, adopted by State Question No. 752, mean?
¶ 1 On November 2, 2010, the people of Oklahoma held an election and adopted State Question No. 752, Legislative Referendum No. 352.[1] The referendum amends Section 3 of Article 7B of the Oklahoma Constitution, which relates to the Judicial Nominating Commission ("Commission").[2]
In addition to increasing the number of non-lawyer ("lay") members on the Commission, [3] the constitutional amendment adds language prohibiting the lay Commission members from having "any immediate family member who has been admitted to the practice of law in the State of Oklahoma or any other state[.]" See id. The amended language pertinent to your question is:
 Section 3. (a) There is established as a part of the Judicial Department a Judicial Nominating Commission of thirteen (13) fifteen (15) members, to consist of:
 (1) six (6) members to be appointed by the Governor, which shall include at least one (1) from each congressional district established by the Statutes of Oklahoma and existing at the date of the adoption of this Article, none of whom shall be admitted to practice law in the State of Oklahoma or have any immediate family member who has been admitted to the practice of law in the State of Oklahoma or any other state;
 (2) six (6) members, which shall include at least
one (1) from each congressional district established by the Statutes of Oklahoma and existing at the date of the adoption of this Article who are, however, members of the Oklahoma Bar Association and who have been elected by the other active members of their district under procedures adopted by the Board of Governors of the Oklahoma Bar Association, until changed by statute; and
 (3) one (1) member three members at large who shall not have been admitted to the practice of law in the State of Oklahoma or any other state, or have any immediate family member who has been admitted to the practice of law in the State of Oklahoma or any other state but who shall be a resident of the State of Oklahoma, one to be selected by not less than eight (8) members of the Nominating Commission. In the event eight (8) members of the Commission cannot agree upon the member at large within thirty (30) days of the initial organization of the Commission or within thirty (30) days of a vacancy in the member at large position, the Governor shall make the appointment of the member at large; one to be selected by the President Pro Tempore of the Senate; and one to be selected by the Speaker of the House of Representatives. No more than two members at large shall belong to any one political party.
State Question No. 752, § 1, at https://www.sos.ok.gov/documents/questions/752.pdf (amending Okla. Const. art. 7B, § 3).
 I. Current Commission Members Appointed Prior to the Amendment of Okla. Const. art. 7B § 3, Are Not Subject to the New Qualifications.
¶ 2 You first ask if the amendment to Section 3 of Article 7B of the Oklahoma Constitution, adopted by State Question No. 752, that prohibits lay Commission members from having an immediate family member admitted to the practice of law, applies to current lay Commission members who were appointed prior to the adoption of State Question No. 752. The current lay Commission members appointed prior to the adoption of the amendment to Okla. Const. art. 7B, § 3, are not prohibited from having an immediate family member who is admitted to the practice of law.
¶ 3 "In construing a provision of a Constitution, the primary inquiry is to ascertain the intention of the framers, and of the people who adopted the same." In re Initiative Petition No. 2, 10 P.2d 271, 276
(Okla. 1932) (citation omitted). "[T]he provisions of a Constitution are construed using the usual rules of statutory construction." Cowart v.Piper Aircraft Corp., 665 P.2d 315, 317 (Okla. 1983). Absent a plain legislative intent to the contrary, legislative enactments are generally presumed to operate prospectively only. In re McNeely, 734 P.2d 1294, 1296
n. 7 (Okla. 1987). Any doubt about legislative intent should be resolved against retroactive application. Id. at 1297.
¶ 4 To ascertain the intent of the Legislature and the people adopting State Question No. 752, the constitutional measure and the ballot title must be construed together. Sw. Bell Tel. Co. v. Okla. State Bd. ofEqualization, 231 P.3d 638, 642 (Okla. 2009). There is no language in the constitutional amendment or the ballot title indicating the Legislature and the people wished to make the new qualification for lay Commission members retroactively apply to current lay Commission members who were appointed prior to the adoption of State Question No. 752.[4] The Oklahoma Legislature has demonstrated it knows how to construct an enactment to apply to current board members. For example, in 2005 Okla. Sess. Laws ch. 168, § 2, the Legislature revised the qualifications for current board members of the Oklahoma State Board of Examiners for Nursing Home Administrators. The Legislature also deemed vacant the appointed positions of the then-existing board members in order for the Governor to appoint new board members who met the revised qualifications. See 2005 Okla. Sess. Laws ch. 168, § 2(C).
¶ 5 Generally, new requirements for holding a constitutionally created office shall not be enforced "against an incumbent during a term of office that began before the effective date of the new requirements."Jackson v. State, 966 P.2d 1046, 1052 (Colo. 1998).[5] We and the majority of Attorneys General have previously found applying new statutory qualifications to existing members of governmental boards violates the general rule against retroactive application of newly enacted statutes. See, e.g. A.G.Opin. 95-71, at 181 (elimination of safe harbor for school board members who move from an election district but remain living in the school district could not be applied to school board members who were elected and moved prior to elimination of the safe harbor provision); 38 Mont. Op. Att'y Gen. 97 (1979), 1979 WL 39724, at *1 ("the general rule against retroactive applications of newly enacted statutes precludes any application of the new residency requirements to previously appointed members of a planning board who are currently serving out the remainder of their terms . . ."); 2005 Ohio Op. Att'y Gen. 2005-004, 2005 WL 263799 *10 (new statutory bond requirements for town clerks apply prospectively only, to persons entering office after the enactment, where no legislative intent indicated the Legislature intended the requirements to apply retrospectively). Because the language of State Question No. 752 does not indicate the Legislature or the people who adopted it intended it to apply retroactively the current lay Commission members, appointed prior to the adoption of State Question No. 752, are not prohibited from having an immediate family member who is admitted to the practice of law in Oklahoma or another state.
 II. The Term "Immediate Family" as Used in Okla. Const. art. 7B, § 3 Must Be Given A Narrow Construction.
¶ 6 The term "immediate family" is not defined in the referendum or ballot title of State Question No. 752. In determining the meaning of "immediate family," "the primary inquiry is to ascertain the intention of the framers, and of the people who adopted [it]." See In re InitiativePetition No. 2, 10 P.2d at 276. This intent is to be found in the instrument itself if the text is not ambiguous. Latting v. Cordell,172 P.2d 397, 401 (Okla. 1946). If the language is ambiguous the rules of statutory construction apply. J.L.M. v. State, 109 P.3d 336, 338 (Okla. 2005); see Cowart, 665 P.2d at 317. "Whether language is ambiguous is a question of law." J.L.M., 109 P.3d at 338. "The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation." Id. Here, the test of whether the term "immediate family" is ambiguous, as that term is used in Okla. Const. art. 7B, § 3, adopted by State Question No. 752, is whether the term is susceptible to more than one reasonable interpretation. A review of Oklahoma statutes clearly demonstrates the ambiguity of the term "immediate family."
¶ 7 The Oklahoma Statutes contain numerous, varying definitions of the terms "immediate family" and "immediate family member," ranging from narrow to broad.[6] A standard rule of statutory construction is that the meaning of a word or phrase may be found in other statutes, except where a contrary intention plainly appears. 25 O.S. 2001, § 2[25-2]. However, because there are so many different statutory definitions of "immediate family," we cannot simply rely on the standard rule of construction, which would provide for the statutory definition of "immediate family" to be applied to Okla. Const. art. 7B, § 3. We must therefore resort to other rules of statutory construction.
¶ 8 A rule of statutory construction applicable to the question presented is the general rule "that any constitutional or statutory provisions which restricts the right to hold public office should be strictly construed against ineligibility." In re Carlisle, 209 S.W.3d 93,96 (Tex. 2006) (citation omitted).[7] A member of the Commission holds "public office," as that term is used in the general rule providing for provisions restricting the right to hold public office to be narrowly construed against ineligibility. The chief elements of a public office are: (a) the specific position must be created by a constitutional provision or authorized by statute; (b) there must be definite duties imposed by law; and (c) the duties must involve the exercise of some portion of the sovereign power. Okla. City v. Century Indem. Co.,62 P.2d 94, 97 (Okla. 1936) (citation omitted). A position that has these three elements is a "public office." Id. Commission members hold public office because their positions are created by the Oklahoma Constitution,[8] they have definite duties imposed by the Oklahoma Constitution, [9]
and their duties involve the exercise of some portion of the sovereign power.[10]
¶ 9 Because Commission members hold public office, the constitutional provision adopted by State Question No. 752, previously found to be ambiguous, which prohibits lay Commission members from having an immediate family member admitted to the practice of law, must be narrowly construed against ineligibility to hold office as a member of the Commission. The most narrow definition found in Oklahoma's statutes of the term "immediate family" is the Ethics Commission definition that has also been adopted in a statute relating to the Horse Racing Commission.See 74 O.S.Supp. 2009, ch. 62, app. Standard 257:1-1-2; 3A O.S.Supp. 2009, § 203.1[3A-203.1](C). These provisions define "immediate family" as "a child under the age of eighteen (18) years residing in a state officer's or state employee's household, a spouse of a state officer or employee, and an individual claimed by the state officer or state employee or the state officer's or state employee's spouse as a dependent for tax purposes." Id. Applying this definition of "immediate family" to Okla. Const. art. 7B, § 3, a person is barred from serving as a lay Commission member if one of the following members of the person's immediate family is admitted to the bar in this State or any other state: (1) a child under the age of eighteen (18) years residing in the person's household; (2) the person's spouse; or (3) an individual claimed by the person or the person's spouse as a dependent for tax purposes.[11]
 ¶ 10 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Because the language of State Question No. 752, Legislative Referendum 352, does not indicate the Legislature or the people who adopted it intended it to apply retroactively, the current Judicial Nominating Commission members, appointed prior to the adoption of State Question No. 752, are not prohibited from having an immediate family member who is admitted to the practice of law in Oklahoma or any other state.
 2. The provisions in Okla. Const. art. 7B, § 3, adopted by State Question No. 752, prohibiting lay members of the Judicial Nominating Commission from having anyone in their "immediate family" who is admitted to the practice of law, are ambiguous.
 3. Ambiguous constitutional provisions that restrict the right of a person to hold public office, such as a lay member of the Judicial Nominating Commission, must be narrowly construed against ineligibility to hold office. Giving the term "immediate family," as used in Okla. Const. art. 7B, § 3, adopted by State Question No. 752, the most narrow construction, a person is prohibited from serving as a lay member on the Judicial Nominating Commission if one of the following members of such person's immediate family are admitted to the bar in this State or any other state: (1) a child under the age of eighteen (18) years residing in the person's household; (2) the person's spouse; or (3) an individual claimed by the person or the person's spouse as a dependent for tax purposes.
W. A. DREW EDMONDSON Attorney General of Oklahoma
JANIS W. PRESLAR Assistant Attorney General
[1] See https://www.sos.ok.gov/gov/questions.aspx (last visited Dec. 7, 2010).
[2] See State Question No. 752, § 1, at https://www.sos.ok.gov/documents/questions/752.pdf.
[3] The amendment increases the number of lay members on the Commission from seven to nine, while maintaining the number of lawyer members at six. See n. 2.
[4] See n. 2.
[5] A full discussion of our conclusion that Commission members hold "public office" is found in our response to your second question.
[6] 3A O.S.Supp. 2009, § 203.1[3A-203.1](C) (for purposes of banning Horse Racing Commission members, employees, and their immediate family from receiving certain funds, "immediate family" has the meaning set forth in an Ethics Commission rule that provides,
 "Immediate family" means a child under the age of eighteen (18) years residing in a state officer's or state employee's household, a spouse of a state officer or employee, and an individual claimed by the state officer or state employee or the state officer's or state employee's spouse as a dependent for tax purposes.
74 O.S.Supp. 2009, ch. 62, app. Standard 257:1-1-2);
3A O.S. 2001, § 402[3A-402](14) (exempting from specific provisions of the Oklahoma Charity Games Act, residents of hospitals, nursing homes and the like, and their "immediate family members," defined as "a spouse, parent, child or sibling or spouse of a parent, child or sibling");
18 O.S. 2001, § 1146[18-1146](C)(10) (for purposes of control share acquisitions, "`immediate family member' is any relative or spouse of a person, or any relative of such spouse, who has the same home as such person");
2010 Okla. Sess. Laws ch. 135, § 3(4) (amending 21 O.S. 2001, § 142A-1[21-142A-1](4) (for purposes of the Oklahoma Victims Rights Act, "`[m]embers of the immediate family' means the spouse, a child by birth or adoption, a stepchild, a parent, a grandparent, or a sibling");
21 O.S. 2001, § 1173[21-1173](F)(5) (for imposing penalties on stalkers who reasonably frighten a person or their immediate family, "[m]ember of the immediate family" means "any spouse, parent, child, person related within the third degree of consanguinity or affinity or any other person who regularly resides in the household or who regularly resided in the household within the prior six (6) months");
40 O.S.Supp. 2009, § 2-210[40-2-210] (allowing unemployment benefits if a "claimant was separated from work due to compelling family circumstances" involving an "`[i]mmediate family member,' [which] means "the claimant's spouse, parents and minor children" id. § 2-210(1));
57 O.S. 2001, § 332.2[57-332.2](F) (requiring the Pardon and Parole Board to notify members of a victim's immediate family, to include "stepparents, stepbrothers, stepsisters, and stepchildren");
59 O.S.Supp. 2009, § 2095.2[59-2095.2](9) (as used in the Oklahoma Secure and Fair Enforcement for Mortgage Licensing Act, "`[i]mmediate family member' means a spouse, child, sibling, parent, grandparent or grandchild and includes stepparents, stepchildren, stepsiblings and adoptive relationships");
71 O.S.Supp. 2009, § 1-102[71-1-102](27)(c) (included in the definition of a promoter is an immediate family member who receives certain securities; "`immediate family' means a spouse of a person, . . . an emancipated child residing in such person's household, or an individual claimed as a dependent by such person for tax purposes");
74 O.S. 2001, § 500.6A[74-500.6A](F) (allowing members of the Governor's and Lieutenant Governor's immediate family to travel on state aircraft; "`immediate family members' means a parent, a spouse, a child, a stepchild, a foster child, and any individual claimed by the Governor or Lieutenant Governor or the spouse of the Governor or Lieutenant Governor as a dependant [sic] for tax purposes").
[7] See Cannon v. Gardner, 611 P.2d 1207, 1211 (Utah 1980); Bickfordv. Jacobson, 558 P.2d 292, 296 (Wash. Ct. App. 1976); Scharn v. Ecker,218 N.W.2d 478, 480 (S.D. 1974); Gilbert v. Breithaupt, 104 P.2d 183, 184
(Nev. 1940); Carter v. Comm'n on Qualifications of Judicial Appointments,93 P.2d 140, 142 (Cal. 1939); 68 Md. Op. Att'y Gen. 48, 1983 WL 179171 *8 (citations omitted), Kan. Att'y Gen. Op. No. 79-12, 1979 WL 39388 *3 (citation omitted); Wash. AGLO 1977 No. 31, 1977 WL 25999 *1 (citations omitted); 46 W. Va. Op. Att'y Gen. 451, 1956 WL 57139 *3 (citation omitted).
[8] "There is established as a part of the Judicial Department a Judicial Nominating Commission of fifteen (15) members. . . ." Okla. Const. art. 7B, § 3.
[9] The Commission determines if the qualifications of nominees to hold judicial office have been met and selects nominees for judicial office to be submitted to the Governor. Okla. Const. art. 7B, § 3(e); Okla. Const. art. 7B, § 4.
[10] We previously found the Pardon and Parole Board exercises sovereign power where it makes recommendations to the Governor of persons who should be granted pardons, paroles, and commutations, and the Governor can only grant such pardons, paroles, and commutations upon favorable recommendation of the Pardon and Parole Board. See A.G. Opin. 93-16, at 102-03. Similarly, the Judicial Nominating Commission exercises sovereign power in that it interviews and selects the nominees for judicial office to be submitted to the Governor. See Okla. Const. art. 7B, § 4. The Governor may appoint a person to judicial office only if such person has been selected as a nominee by the Judicial Nominating Commission. Id.
[11] Under current Oklahoma law, in order to be admitted to practice law in Oklahoma, a person must be at least eighteen (18) years of age. 5 O.S. 2001, ch. 1, app.5, R. 1, § 2. *Page 1